# THE AMERICAN ICE COMPANY

*vs.*

## CATHERINE FITZHUGH ET AL.

*Workmen's Compensation Act: horse-drawn vehicles; intoxication of employee; when no defense. Statutes: construction of—; general and particular words.*

The right to open and close a case follows the burden of proof, unless otherwise provided by law.                     p. 385

When particular words of description are used in a statute to indicate the scope of its application, followed by general words, the latter are to be limited in their meaning so as to embrace only a class of things indicated by the particular things.                                              p. 388

But this is only a rule of construction to aid in arriving at the real legislative intent; it is not a rigid rule, and does not override all other rules, nor is it ever applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument.                              p. 388

If the particular words exhaust the *genus* so that there is nothing *ejusdem generis* left, the general words may be given a meaning outside of the class indicated by the particular words.                                              p. 388

Section 41 of Chapter 800 of the Acts of 1914—the Workmen's Compensation Act—making the Act apply to the operation of * * * cars, trucks, wagons or other vehicles * * * propelled by steam, gas, gasoline, electric, mechanical or other power, covers the cases of vehicles drawn by horses or mules.                                              p. 388

For the intoxication of the employee to be a defense under the Act, it must appear that the injury which resulted in the death of the employee was the *sole* cause of the accident.  p. 393

The right of employees to compensation under the Act in no manner depends upon the negligence of the employer.     p. 393

*Decided April 26th, 1916.*

Appeal from the Baltimore City Court.   (GORTER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Eli Frank* and *C. John Beeuwkes* (with whom was *German H. H. Emory* on the brief), for the appellant.

*W. Booth Settle,* for the appellees.

*J. Walter Lord,* Assistant Counsel for the State Industrial Accident Commission, on the invitation of the Court, took part in the argument.

THOMAS, J., delivered the opinion of the Court.

This appeal brings up for review the rulings of the Baltimore City Court on appeal from a decision of the State Industrial Accident Commission.

The record contains eleven exceptions.  The first two raise the question of the constitutionality of the Act of 1914, Ch. 800, commonly known as the "Workman's Compensation Law," which is alleged to be repugnant to the Constitution of the United States and to the Bill of Rights and Constitution of the State of Maryland.  These exceptions were not pressed, however, in this Court, and as we understand

that a case has been instituted and is now pending in one of the courts of Baltimore City for the purpose of testing the Constitutionality of the Act, we will reserve our decision of the question until the same is pressed and fully argued.

The third and tenth exceptions are to the refusal of the lower Court in the trial of the case to allow the appellant to "open and close the evidence and arguments." Section 55 of the Act provides:

> "Any employer, employee, beneficiary or person feeling aggrieved by any decision of the Commission affecting his interests under this Act may have the same reviewed by a proceeding in the nature of an appeal and initiated in the Circuit Court of the county or in the Common Law courts of Baltimore City having jurisdiction over the place where the accident occurred or over the person appealing from such decision, and the Court shall determine whether the Commission has justly considered all the facts concerning injury, whether it has exceeded the powers granted it by the Act, whether it has misconstrued the law and facts applicable in the case decided. * * * Upon the hearing of such an appeal the Court shall, upon motion of either party filed with the Clerk of the Court according to the practice in civil cases, submit to a jury any question of fact involved in such case. * * * The Attorney General shall be the legal adviser of the Commission and shall represent all of its proceedings whenever so requested by any of the Commissioners in all Court proceedings under or pursuant to this Act; the decision of the Commission shall be *prima facie* correct, and the burden of proof shall be upon the party attacking the same."

The American Ice Company, the appellant in the Court below, filed a motion for leave to produce evidence in addition to that taken before the Commission, alleging that the testimony taken before the Commission did not fully and fairly present the appellant's defense, and the motion was

granted. By the express terms of the statute the burden is placed upon the appellant to show error in the decision of the Commission which must be taken on appeal as *prima facie* correct. In the case of *Frazier et al.* v. *Leas*, 127 Md. 572, which determined the right of the appellant to offer additional evidence, we said. through JUDGE BURKE: "The Act provides that the decision of the Commission shall be treated on appeal as *prima facie* correct, that the burden of proof shall be upon the party attacking it. The Act secures to the party appealing the right to a jury trial, and the right to have 'any question of fact involved in the case' submitted to the jury. The Court is empowered to confirm, reverse, or modify the decision of the Commission, and it is provided that in the proceedings on appeal 'full opportunity to be heard shall be had before judgment is pronounced.' " We think the contention of the appellant here made is fully sustained by the case of *Baltimore City* v. *Hurlock*, 113 Md. 674, where we held that the right to open and close follows the burden of proof, unless otherwise provided. In that case JUDGE PEARCE said: "In 16 *Cyc.* 931, it is said: 'The rule regulating the burden of proof in special judicial proceedings is the same that governs where an issue has been formulated by the pleadings. He who asks affirmative relief, one for example who appeals from an order * * * has the burden of convincing the Court that action should be taken in his favor.' The right to open and close accompanies the burden of proof, unless otherwise clearly provided by law. Hence it follows, as stated in 15 *Enc. Pl. & Pr.* 183-4: 'the test is that the right belongs to the party against whom judgment would be rendered if no evidence were introduced on either side.' * * * We must assume that the ruling we are now considering was based upon the requirement to hear the case *de novo*, and in analogy to the practice in appeals from justices of the peace, which are required to be heard *de novo*, and in which the plaintiff below has the burden of proof, and must open the cause, whether he be appellant or appellee; and the argument of the appellee in the case before us

proceeds upon the theory that the same rule and reason necessarily applies here. But that view ignores the proviso which requires the affirmance of the assessment in the absence of affirmative evidence to the contrary, and it thereby gives the words *de novo* an effect and scope clearly denied to them by that provisio. * * * Whatever conclusion might be drawn from the words *de novo,* if the burden of proof was not fixed by the proviso embodied in this section, effect must be given to that proviso, which thus becomes decisive of the question." The rule stated in *Hurlock's case* was later approved in *Shoop* v. *Fidelity Company,* 124 Md. 130, and in the case of *Yingling* v. *Hesson,* 16 Md. 112, the Court, referring to the claim of an executor, said: "When contested he ought not to be deprived of the advantage of position which the burden of establishing the claim would give any other creditor of the estate."

The evidence shows that Seymour Fitzhugh was employed by the appellant, the American Ice Company, as driver of a two-ton ice and coal wagon; that his duties also required him to load and unload the wagon, and that on the 12th of December, 1914, while driving the wagon of the company, loaded with oysters shells, along North avenue in Baltimore City he fell or was thrown from the wagon and killed. The ice company offered evidence tending to show that he was drunk at the time of the accident, and that the accident was due to his intoxication. The widow of Fitzhugh presented her claim to the State Industrial Accident Commission, and the appeal of the ice company to the Baltimore City Court was from the order or decision of the Commission allowing her compensation.

The main contention of the appellant in the Court below and in this Court is that the provisions of the Workman's Compensation Law do not include drivers of horse-drawn vehicles. Section 32 of the Act provides: "Compensation provided for in this Act shall be payable for injuries sustained or death incurred by employees engaged in the following extra-hazardous employments." Then follows forty-

two paragraphs or sub-sections specifying certain extra-hazardous employments. The forty-first section is as follows: "The operation, otherwise than on tracks, on streets, highways, or elsewhere of cars, trucks, wagons or other vehicles, and rollers and engines, propelled by steam, gas, gasolene, electric, mechanical, or other power," and sub-section forty-three provides: "In addition to the employments set out in the preceding paragraphs, this Act is intended to apply to all extra-hazardous employments not specifically enumerated herein." The appellant insists that the intention of the Legislature to exclude drivers of horse-drawn wagons or vehicles is evidenced by the use of the words "operation," "power" and "propelled," and by the fact, disclosed by the journals of the House and Senate, that the Act as originally introduced contained the words, "or drawn by horses or mules," following the words "mechanical or other power," and that the words "or drawn by horses or mules" were by amendment stricken out. Following the doctrine of *noscitur a sociis* and the rule *ejusdem generis* the appellant argues that the words of the statute "or other power" in sub-section forty-one should be read as "other such like," and as including other power of the kind and character of the several kinds enumerated. The doctrine relied upon, is, however, only applied as an aid in ascertaining the legislative intent and is not controlling where it appears that no such limitation was intended. It is said in 36 *Cyc.* 1121-22: "Nor does the doctrine apply where the specific words of a statute signify subjects greatly different from one another, nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless." In the case of *National Bank of Commerce* v. *Ripley*, 161 Mo. 126, the Supreme Court said: "It is a rule of construction that a statute should be construed so as to give effect to all its words, if it can be done. Out of that rule grew the further rule on which the respondent relies, that is, that when particular words of description are used, followed by general

words, the latter are to be limited in their meaning so as to embrace only a class of things indicated by the particular words. * * * But this is only a rule of construction to aid us in arriving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute, as that purpose may be gathered from the whole instrument. It is a corollary to the first proposition above stated, that the statute must be construed to give effect to all its words. The rule itself must not be so construed as to defeat that purpose. Whilst it is aimed to preserve a meaning for the particular words, it is not intended to render meaningless the general words. Therefore, where the particular words exhaust the class, the general words must be construed as embracing something outside of that class. If the particular words exhaust the *genus* there is nothing *ejusdem generis* left, and in such case we must give the general words a meaning outside of the class indicated by the particular words or we must say that they are meaningless, and thereby sacrifice the general to preserve the particular words. In that case the rule would defeat its own purpose." Applying the well recognized exception to the doctrine relied on to the provisions of the Act in question the kinds of power specifically mentioned in sub-section forty-one of section 32 of said Act would seem to embrace all kinds of power other than animal power, and if we are to give the words "or other power" any meaning at all there is no reason why they should not include horse power or mule power. It is said in *Luce* v. *Hassam*, 58 Atl. 725; "The word 'wagon' is synonymous with the word 'carriage,' and may be used to designate any wheeled vehicle drawn by horses," and in the case of *Fifth Avenue Coach Company* v. *New York*, 111 N. Y. Supp. 759, the Supreme Court speaks of "horse propelled cars" and stages "propelled by horse power." In the case of *Frazier* v. *Leas, supra,* JUDGE BURKE said: "The language of the section must be examined in the light of accepted rules of construction. *First,* the intention of the

Legislature as expressed in the words of the Act must be
ascertained and given effect; *secondly,* 'the language of a
statute is its most natural expositor, and where the language
is susceptible of a sensible interpretation, it is not to be
controlled by any extraneous considerations.' "   In view of
the authorities cited, and the clearly expressed intention of
the Legislature to include within the provisions of the Act
*all* extra-hazardous employments we would not be justified
in giving sub-section forty-one the narrow and restricted con-
struction contended . for by the appellant, and must there-
fore hold that the employment in which Seymour Fitzhugh
was engaged at the time he received the injury which re-
sulted in his death is covered by that section.

The evidence excepted to in the fourth, fifth, sixth, sev-
enth, eighth and ninth exceptions is the testimony of the
superintendent of the State insurance fund under the Work-
man's Compensation Act, whose duties are the same as the
superintendent of the insurance department of a casualty
company which underwrites various occupations, which was
offered in connection with a list of employments "on which
a lower rate of insurance is charged than is charged for
drivers of horse-drawn vehicles," for the purpose of showing
that the employment of a driver of a horse-drawn coal or ice
wagon is an extra-hazardous employment within the mean-
ing of sub-section forty-three of section thirty-two of the Act.
This evidence would seem to be admissible upon the principle
applicable to mortality tables (3 *Wigmore on Ev.,* secs.
1698-1707; 1 *Greenleaf on Ev.* (16th Ed.), secs. 162 i-
162m; *Kerrigan* v. *Penna. R. Co.,* 44 Atl. 1069), but in
view of the construction we have placed upon sub-section
forty-one of section thirty-two of the Act it is not necessary
to pass upon these exceptions, and we are not to be under-
stood as ruling upon the admissibility of the evidence re-
ferred to.

The only remaining exception is to the ruling of the Court
below on the prayers.   The appellant states in his brief that
his A, B, C and D prayers were offered on the theory that

the driver of a horse-drawn vehicle is not covered by the provisions of the Act, and they are disposed of by what we have already said upon that subject.

Section fourteen of the Act provides: "Every employer subject to the provisions of this Act shall pay or provide, as required herein, compensation according to the schedules of this Act, for the disability or death of his employee resulting from an accidental personal injury sustained by the employee, arising out of and in the course of his employment, without regard to fault as a cause of such injury, except where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or another, or where the injury results solely from the intoxication of the injured employee while on duty. Where the injury is occasioned by the willful intention of the injured employee to bring about the injury or death of himself or another, or where the injury results from the intoxication of the injured employee while on duty, neither the injured employee nor any dependent of such employee shall receive compensation under this Act. Section forty-five is as follows: "Notwithstanding anything hereinbefore or hereinafter contained, no employee or dependent of any employee, shall be entitled to receive any compensation or benefits under this Act on account of any injury to, or death of an employee, caused by self-inflicted injury, the willful misconduct, or the intoxication of such employee," and section sixty-one provides, "In any proceeding for the enforcement of a claim for compensation under this Act, it shall be presumed in the absence of substantial evidence to the contrary, * * * (d) That the injury did not result solely from the intoxication of the injured employee while on duty."

By the eighth prayer of the appellee the jury were instructed as follows: "If they shall find from the evidence that the deceased, Seymour Fitzhugh, met his death in an accident while in the employ of the American Ice Company, and in the course of his said employment, and that his said death was not due to any self-inflicted injury, or willful

misconduct, or intoxication on the part of the said Seymour Fitzhugh, then the verdict of the jury must be for the claimants. And the jury are further instructed that it is presumed by the law, in the absence of substantial evidence to the contrary, that the death of said Seymour Fitzhugh was not occasioned by his willful intention, and that his said death did not result solely from intoxication while on duty." We see no objection to this prayer. It required the jury to find all the disputed facts necessary to entitle the appellee to recover, and the concluding portion of the prayer simply instructed the jury as to the burden of proof, in the language of the Act.

The appellant's first prayer asserted its right to a verdict if the jury found that Seymour Fitzhugh was intoxicated at the time of his death and that such intoxication contributed to his death. The defendant's second prayer asked for the instruction that if the jury found that Seymour Fitzhugh was intoxicated while on duty and that his death directly resulted from such intoxication then their verdict should be for the appellant. By its third prayer the jury were instructed that if they found that Seymour Fitzhugh was intoxicated at the time of the accident referred to and that his death directly resulted from such intoxication, and if the jury further believed from the evidence that the accident would not have happened if the deceased had not been intoxicated then their verdict should be for the appellant. These prayers ignore the provision of the Act which disentitles the employee to recover only where intoxication is the *sole cause* of the injury which results in death. The prayers properly present the defense of contributory negligence applicable to ordinary cases of negligence, but the Act in question was designed to abolish the defense of contributory negligence in cases falling within its provisions, and it is only where intoxication is the *sole cause,* and not the contributing cause of the injury that it can be relied on as a defense to the claim of the employee or his dependents. In other words under the terms of the Act the injury for which

compensation is sought must be due exclusively or entirely to the intoxication of the employee in order to constitute a defense to the claim. Sub-section 7 of section 61 declares that "death," referred to as the basis of compensation under this Act, means "only death resulting from such injury," and where the *injury*, which results in the death of the employee, results solely from intoxication the defendants are not entitled to compensation.

The appellant's fourth prayer sought to instruct the jury that if the negligence on the part of Seymour Fitzhugh directly contributed to the happening of the accident which caused his death the verdict should be for the appellant, and its fifth prayer asked for the instruction that if the jury found that the death of Seymour Fitzhugh was not caused or contributed to by any act, neglect or default of the ice company then their verdict should be for the company. The right of the employee to compensation under the provision of the Act is not dependent upon negligence on the part of the employer, and is not denied by reason of contributory negligence on his part, and these prayers were therefore properly refused.

It follows from what we have said that because of the errors in the rulings referred to in the third and tenth exceptions the judgment must be reversed and case remanded for a new trial.

> *Order reversed, with costs to the appellant and new trial awarded.*

In overruling a motion for a modification of the opinion, THOMAS, J., delivered the opinion of the Court.

The obvious purpose of the Workman's Compensation Law was to do away with the defense of contributory negligence in all cases coming within its provisions, and to require compensation without regard to the question of negligence on

the part of the employer or employe, "except where the injury is occasioned by the wilful intention of the injured employe to bring about the injury or death of himself or of another, or where the injury results solely from the intoxication of the injured employe while on duty."

Where, therefore, the intoxication of the injured employe is relied on as a defense, it must be made to appear that the injury, that is to say the *accident* which resulted in the *injury* for which compensation is sought, was caused *solely* and *exclusively* by the intoxication of such employe.    In other words, the injury for which compensation is required is the "*accidental personal injury*" of the employe resulting in his "disability or death," except where such *injury,* or the *accident* resulting in such injury, is attributable *solely* and exclusively to "the intoxication of the injured employe while on duty."

This construction of the Act we have already stated, we think, with sufficient clearness in discussing the appellant's prayers, and we will therefore overrule its motion for a modification of the opinion.

*Motion overruled.*