## COLIN C. COLGAN *v.* BOARD OF COUNTY COMMISSIONERS FOR PRINCE GEORGE'S COUNTY, MARYLAND

[No. 604, September Term, 1973.]

*Decided May 22, 1974.*

332

The cause was argued before MORTON, MENCHINE and LOWE, JJ.

*Joseph F. McBride*, with whom were *Roy W. Hooten, C. Frederick Fiege* and *Hooten, Fiege & McBride* on the brief, for appellant.

*R. Roger Drechsler*, with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Colin C. Colgan, appellant, a fire fighter of Prince George's County, claimed workmen's compensation benefits from the Board of County Commissioners for Prince George's County, Employer and Self-Insurer. His claim was asserted under Article 101, § 64A. The Workmen's Compensation Commission processed the claim as for an accidental injury arising out of and in the course of his employment and rejected it. Colgan appealed to the Circuit Court for Prince George's County.

At the time of claimant's alleged disability (September 9, 1971) Code Article 101, § 64A read as follows: [1]

"Any condition or impairment of health of any paid municipal, county, airport authority or fire control district fire fighter caused by lung diseases,

---

1. Section 64A was amended by Ch. 281 of the Acts of 1972 to bring State, municipal, county and airport authority police within its terms.

heart diseases, or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

Notwithstanding any provision of this article any paid fire fighter whose compensable claim results from a condition or impairment of health caused by lung diseases, heart diseases or hypertension and has been suffered in the line of duty shall receive such benefits as are provided for in this article in addition to such benefits as he may be entitled to under the retirement system in which said fire fighter or police officer was a participant at the time of his claim. The benefits received under this article however, shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter or police officer."

Employer and Self-Insurer attacked the section on constitutional grounds, urging that it was violative of both the State and United States Constitutions. The trial court, finding that § 64A was constitutionally infirm as in violation of Article III, Section 29 of the Constitution of Maryland, affirmed the Workmen's Compensation Commission. He thus explained his decision:

"My understanding of the Workmen's Compensation Law is that the claims arise in two different categories: One is from accidental injuries and the other is from contracting an occupational disease.

I conclude that it would be necessary, for anyone to receive compensation, to come under one or the other of those two categories. It is impossible to tell whether the Act itself, not mentioning occupational disease, means that these ailments would be considered to be occupational diseases and would follow the route of an occupational disease claim, or

whether it is an accidental injury and would follow that route. Obviously, there is no claim for an accidental injury here.

Accordingly, I conclude that the Act is unconstitutional for the foregoing reasons and, therefore, the claimant in this case would not be entitled to recover. * * * "

It will be observed that the trial court did not reach the question of constitutionality of the section under the Constitution of the United States. The question was, however, presented below. We differ, for reasons to be stated *infra,* with the conclusion reached by the trial court that the section is violative of Article III, Section 29. We shall, accordingly, deal as well with the validity of the section under the Constitution of the United States for the guidance of the lower court and to avoid the expense and delay of another appeal to this Court. Rule 1085.

### Maryland Constitution

Article III, Section 29 of the Constitution of Maryland reads as follows:

"The style of all laws of this State shall be, 'Be it enacted by the General Assembly of Maryland:' and all Laws shall be passed by original bill; and every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; and no Law, nor section of Law, shall be revived, or amended by reference to its title, or section only; nor shall any Law be construed by reason of its title, to grant powers or confer rights which are not expressly contained in the body of the Act; and it shall be the duty of the General Assembly, in amending any article, or section of the Code of Laws of this State, to enact the same, as the said article, or section would read when amended. And whenever the General Assembly shall enact any Public General Law, not amendatory of any section, or article in the said

Code, it shall be the duty of the General Assembly to enact the same, in articles and sections, in the same manner, as the Code is arranged, and to provide for the publication of all additions and alterations, which may be made to the said Code."

Section 64A came into being as Chapter 695 of the Acts of 1971. In the course of its passage through the legislature, both the title and the body of the Bill (H.B. 433) were amended. As introduced, the title of the bill had provided, *inter alia,* that its purpose was to "establish certain medical conditions where the death or disability of a fire fighter is *presumed to be accidental* and as a result of his employment." (Emphasis added) An amendment to the title of the bill struck out the above quoted language and declared that its purpose was to "provide that there is *a presumption of compensable occupational disease* in cases of certain fire fighters sustaining temporary or total disability or death under certain conditions." (Emphasis added)

The body of the bill at introduction had contained the words: *"presumed to have been accidental* and to have been suffered in the course of his employment." (Emphasis added) By amendment in the course of passage the above quoted language was stricken and the following words substituted: *"presumed to be compensable under this Article* and to have been suffered in the line of duty and as a result of his employment.[2] (Emphasis added)

We find *Shipley v. State,* 201 Md. 96, 93 A. 2d 67, and *MTA v. Baltimore County Revenue Authority,* 267 Md. 687, 298 A. 2d 413, to be dispositive of the constitutional issue under Article III, Section 29 of the Constitution of Maryland.

In *Shipley* it was said at page 103 [70]:

"A title which is descriptive to some extent must go far to fix the understanding of its purpose among legislators and interested members of the public. 'Bills are sometimes read, especially the first time,

---

**2.** Other amendments to the Bill and Title have no bearing upon the issue here presented.

by their titles only, and the titles only are spread upon the journal.' *Stiefel v. Maryland Institution for the Blind*, 61 Md. 144, 148. And it is the main purpose of the constitutional provision to prevent enactment under a misconception by reason of a misdescriptive title. 'The object of the requirement of the Constitution is that legislators and the public may be informed by the title of the general nature of the provisions proposed to be enacted.' *Levin v. Hewes*, 118 Md. 624, 632, 86 A. 233, 235. It follows that a restriction in the title must *either confine the operation of the act to conform to that description, if such a construction is possible,* or render the act void to the extent of the conflict. * * * " (Italics supplied)

In *MTA v. Baltimore County, supra*, it was said at page 695-696 [418]:

"* * * That the title of an act is relevant to ascertainment of its [the legislature's] intent and purpose is well settled. * * * "

In the subject case there is no repugnancy between title and body of the act. The body of the act provides that certain conditions may be "compensated under this Article [Article 101]." The title of the act in no way conflicts with that purpose. The title simply makes clear that the act should be interpreted as granting such benefits in accordance with the provisions of that article as they relate to occupational diseases.

*Belschner v. Anchor Post*, 227 Md. 89, 175 A. 2d 419, declared at page 91 [420] that:

"* * * the provisions of Section 36 of Article 101 [Compensation Benefits Section] * * * are as applicable in a proper case to a disability resulting from an occupational disease as they are to a disability arising out of an accidental injury * * *."

Moreover, Article 101, § 22 (a) specifically provides that compensation benefits for occupational disease shall be the

same as that payable for accidental injury, except where otherwise provided in Article 101.

We hold, accordingly, that the legislative purpose in the passage of Section 64A was to amend the workmen's compensation law in the field of occupational diseases and is not violative of Article III, Section 29 of the Constitution of Maryland.

Appellee suggests also that the section offends the due process provisions of Article 23 of the Maryland Declaration of Rights. Article 23 has been equated to the Fourteenth Amendment of the Constitution of the United States. *Anne Arundel County v. English*, 182 Md. 514, 521, 35 A. 2d 135, 139. We shall deal with this in our discussion of the validity of the section, *vel non*, under the Constitution of the United States.

## The Constitution of the United States

### 1. As to Workmen's Compensation Generally

Constitutionality of State legislation in the area of workmen's compensation is too well-established to permit of further debate. In *Solvuca v. Ryan and Reilly Co.*, 131 Md. 265, 101 A. 710, wherein constitutionality of Maryland's workmen's compensation law was upheld, it was said at page 270 [712]:

> "We have frequently said that the 'law of the land,' in the Constitution of this State, and 'due process of law,' in the Constitution of the United States mean the same thing."

The Court in *Solvuca* cited as its principal authority the case of *N.Y. Central R.R. Co. v. White*, 243 U. S. 188, 61 L. Ed. 667, wherein the Supreme Court of the United States had declared at page 207:

> "* * * laws regulating the responsibility of employers for the injury or death of employees, arising out of the employment, bear so close a relation to the protection of the lives and safety of those concerned that they properly may be

regarded as coming within the category of police regulations."

*2. Due Process and Equal Protection*

(Fourteenth Amendment and
Article 23 Maryland Declaration of Rights)

We reject the contention of the appellee that the words "fire fighter" are vague and uncertain. Webster's Third New International Dictionary 855 (1961 ed.) thus defines the words:

"fire fighter, n: one who fights fires: as (a) a member of a municipal fire department (b) one of a crew that combats forest fires (c) one who fights mine fires."

Under the subject statute, of course, that definition is limited to those persons who are "paid municipal, county, airport authority or fire control district fire fighter[s]."

The language used in *Richards Furniture Corp. v. Board*, 233 Md. 249, 196 A. 2d 621, is particularly apt in this case. It had been said at page 264 [629]:

"* * * The Act is couched in plain and simple language, which may be easily understood by persons of ordinary intelligence. This is all that is required of a statute in order to prevent it from being vague and indefinite in a constitutional sense."

Indeed the words "fire fighter" were used by the late Chief Judge Brune to designate a member of the Baltimore City Fire Department in the case of *Severn v. Baltimore City*, 230 Md. 160, 162, 186 A. 2d 199, 200.

Statutes conferring benefits upon firemen and fire fighters generally, have been sustained as a natural and reasonable classification within constitutional limits. In *Grosse Pointe Fire Fighters Association v. Village of Grosse Pointe*, 6 N.W.2d 725 (S. Ct. Mich. 1942), a statute authorizing grant of holiday time exceeding the allowance to

other municipal employees was sustained. The Court said at page 726:

> "[The statute] applies in a statewide sense to every Michigan municipality, which maintains an organized paid or part paid fire department. A law of this type obviously need not apply, and probably in a practical sense could not be made to apply, indiscriminately to all employers or to all adult male employees. But the legislature may enact a law which is applicable to a specified class or classes of employers or employees, provided the classification is sustainable in reason. Particularly is this true of the State's power to regulate the affairs of its governmental units. We cannot say the statutory provision under consideration is invalid as being 'special' or local legislation or that it is 'capricious and unreasonable class legislation.' It applies in a state-wide manner to all 'municipalities which maintain or may hereafter maintain an organized paid or part paid fire department.' "

In *Sullivan v. City of Omaha,* 21 N.W.2d 510 (S. Ct. Neb. 1946), the constitutionality of a statute conferring special pension benefits to firemen was sustained, the Court saying at page 512: "We think that appellees as firemen in a metropolitan city constitute a reasonable classification of persons for purposes of legislation concerning them." See also: *Iben v. Borough of Monaca,* 43 A. 2d 425 (Super. Ct. Pa. 1945); *Geary v. Retirement Board,* 231 A. 2d 743 (S. Ct. Pa. 1967).

Fourteen states have enacted legislation by which the disability or death of fire fighters or police, or both, caused by lung or heart disease is presumed to be employment connected.[3]

---

3. California: § 3212 and 3212.2 West's Ann. Cal. Code 1954; Labor Code 1971, 1974 Supp.
   Florida: Ch. 73-125 Acts of 1973.

The constitutionality of such statutes has been put in issue in appellate litigation in three states.[4]

*Kellerman v. City of St. Paul,* 1 N.W.2d 378 (S. Ct. Minn. 1941) thus disposed of the issue at page 380:

"Relator contends that the 1939 amendment as applied to this case is unconstitutional in that it violates the equal protection clauses of the Federal and State Constitutions and the prohibition against special legislation found in the State Constitution. Legislation in its very nature involves classification, and a statute will be held unconstitutional on that ground only where the class it necessarily establishes has no substantial basis in fact. Much is left to the sound discretion of

---

Maine: Title 39, § 193 Revised Statutes Annotated, Cumulative Supplement.

Maryland: Article 101, § 64A (as enacted by Ch. 695, Acts 1971).

Michigan: § 17.237 (405), Michigan Statutes Annotated.

Minnesota: § 176.661 and 176.011, Minn. St. 1971, (as amended by Ch. 633, Acts of 1973).

Nevada: § 617.455, Nevada Revised Statutes.

New Jersey: Section Title 34:15-43.2, New Jersey Statutes Annotated.

North Carolina: Ch. 1078 Laws of 1949.

North Dakota: § 65-01-02, N. E. Century Code Ann. 1959.

Ohio: § 4123.68, Ohio Revised Code 1971-72 Supp.

Oregon: § 656.802, Oregon Revised Code (as amended by Ch. 543, Acts of 1973).

Pennsylvania: Art. 53, § 637, Purdon's Pennsylvania Statutes Annotated.

Wisconsin: § 891.45, Wisconsin Statutes.

4. Similar statutes have been applied by appellate courts in cases where the constitutional issue apparently was not raised. See: *Cichecki v. Hamtramck Police Department,* 170 N.W.2d 58 (S. Ct. Mich. 1969); and *Sperbeck v. Dept. of Industry,* 174 N.W.2d 546 (S. Ct. Wisc. 1970). In *Sperbeck,* the Supreme Court of Wisconsin used language reasonably implying that the Court gave consideration to the constitutional aspects of such legislation, when it said at page 549:

"The legislature — faced with the decision of whether to enact sec. 891.45, Stats. — decided to create the presumption and as already stated, it acted reasonably in doing so. Evidence which only attacks the rationale of the statute, without exposing the cause of death of a particular claimant, does nothing more than question the wisdom of the legislature. As the trial court stated, 'If the Legislature has acted unwisely upon the basis of insufficient information, the remedy is to go back to the Legislature.'"

the legislature. The apparent high percentage of occurrence of coronary sclerosis among firemen demonstrates that the legislature was not arbitrary in providing for them as a class. Relator asserts that other occupations were shown to be susceptible to coronary sclerosis. The legislature 'is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may "proceed cautiously, step by step," and "if an evil is specially experienced in a particular branch of business" it is not necessary that the prohibition "should be couched in all-embracing terms." ' The statute is undoubtedly constitutional." [Internal citations omitted.]

See also: *Anderson v. Minneapolis,* 103 N.W.2d 397 (S. Ct. Minn. 1960).

In *City and County of San Francisco v. Industrial Accident Commission,* 298 P. 2d 651 (Dist. Ct. of Appeal, First District, Division 1, California 1956) the Court passed upon the constitutionality of a statute creating a presumption that heart trouble suffered by a member of a fire department arose out of and in the course of his employment. In rejecting contentions that the statute: (a) created an unreasonable classification and (b) was too indefinite and ambiguous, the Court said at page 656:

"We entertain no doubt concerning the constitutionality of section 3212 in its application to the facts of this case."

See also: *Ferris v. Industrial Acc. Comm.,* 46 Cal. Rptr. 913 (Dist. Ct. of Appeal, Fourth District, California 1965).

North Carolina reached a contrary constitutional conclusion. In *Duncan v. City of Charlotte,* 66 S.E.2d 22 (S. Ct. N. C. 1951) the statute had provided *inter alia* that coronary thrombosis and other heart ailments should be deemed compensable occupational diseases as to active members of city fire departments. The statute was held to

violate Article I Section 7 of the Constitution of North Carolina which provides that:

"No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services."

The Court said at page 26:

"The defendant's challenge is well taken. In reality, the statute seeks to confer upon firemen a special privilege not accorded other municipal employees, nor to employees in private industry. It places on the taxpayers a burden which the Constitution declares it was not intended for them to bear. * * * "

We note that the North Carolina decision was bottomed upon a State Constitution differing materially from our own and bearing no reasonable analogy to the Fourteenth Amendment. The Declaration of Rights of Maryland, on the other hand, is equated with that amendment. *Solvuca v. Ryan & Reilly Co., supra.* Thus, in ruling upon constitutional attacks on statutes passed under the police power, Maryland Courts had used much the same reasoning as did the Court in *Kellerman, supra.*

We apply here what was said in *Clark v. Tawes,* 187 Md. 195, 201, 49 A. 2d 463, 466:

"* * * This is a reasonable classification which the Legislature has an entire right to make. It is not for us to say whether it is the best classification or not. It is a matter within the discretion of the Legislature which it can exercise without judicial hindrance."

Only when the distinctions and classifications made by statute are without reasonable foundation is there a legislative departure from its constitutional powers. *Celanese Corp. v. Davis,* 186 Md. 463, 473, 47 A. 2d 379, 384.

In the subject statute the legislature has seen fit to grant to fire fighters a presumption that a disability arising from

lung and heart diseases was suffered in the line of duty and as a result of their employment. There is general public knowledge that fire fighters, in the course of their daily activities, are exposed to inhalation of smoke or noxious fumes and are subjected to unusual stresses and strains. An adequate constitutional base exists here.

Suggested constitutional impediments grounded upon absence of due process and denial of equal protection of the laws require rejection in the light of *Allied American Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 150 A. 2d 421. As to "due process" the Court said at page 617 [427-28]:

> "The due process clause does not * * * inhibit a state from insisting that all contract and property rights are held subject to the fair exercise of the police power. *Atlantic Coast Line v. Goldsboro,* 232 U. S. 548, 558, 58 L. Ed. 721. The exercise of the power is fair when the purpose is a proper public one and the means employed bear a real and substantial relation to the end sought and are not arbitrary or oppressive. The Supreme Court said in *Erie R. R. Co. v. Williams,* 233 U. S. 685, 700, 58 L. Ed. 1155: 'It is hardly necessary to say that cost and inconvenience (different words, probably, for the same thing) would have to be very great before they could become an element in the consideration of the right of a State to exert its reserved power or its police power.' There are many holdings that enforcement of uncompensated obedience to a regulation passed in the legitimate exercise of the police power is not a taking without payment of just compensation. *N. O. Public Service v. New Orleans,* 281 U. S. 682, 687, 74 L. Ed. 1115; *Chicago, Burlington & Q. R. Co. v. Chicago,* 166 U. S. 226, 255, 41 L. Ed. 979; *Noble State Bank v. Haskell,* 219 U. S. 104, 110, 55 L. Ed. 112; *Capital Transit Co. v. Bosley, supra,* at page 514 of 191 Md.

> Most governmental regulations of business necessarily cause inconvenience, effort and

financial burdens for which no compensation is, or need be, paid. These uncompensated efforts are a part of the cost of participating in the complications of modern life and society. They may reduce the net return of the enterprise but, of itself, that brings about no constitutional weakness in the legislation that demands them. *Day-Brite Lighting, Inc. v. Missouri*, 342 U. S. 421, 96 L. Ed. 469."

As to "equal protection" the Court said at page 623 [431]:

"We \* \* \* pass to consideration of equal protection. Generally, one who attacks a regulation under the police power on the ground that it violates due process adds a claim that it is a denial of equal protection, and, although the scope of the two clauses is not coterminous, usually his case stands or falls on the strength or weakness of his due process argument. Except where discrimination on the basis of race or nationality is shown, few police power regulations have been found unconstitutional on the ground of denial of equal protection, which may be what prompted the Supreme Court to call the equal protection clause the 'usual last resort of constitutional arguments.' The appellants can fare no better, we think, than do most on this point.

The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis."

In *King Furniture Mfg. Co. v. Thompson,* 248 Md. 682, 238 A. 2d 231, the statute introducing a "serious disability"[5] concept into the workmen's compensation law was attacked upon constitutional grounds. We find apposite to the subject case what was said in *King* at page 689 (234-35):

> "The third contention that the act violated the respective due process clauses of the state and federal Constitutions is * * * the claim that the method chosen for determining who is to be included within the category is unreasonable.
>
> Since compensation laws like other laws are presumed to be constitutional and are construed in such way as will carry out the objectives of their enactment, the burden of showing the unreasonableness of a classification is on the party attacking it."

We find no such showing here.

### Non-constitutional Issues

Appellant in his brief asked us to consider the following issues:

> "What is the nature of the presumption contained in Article 101 Section 64 A of the Annotated Code of Maryland?
>
> What is the presumption set forth in Article 101 Section 64 A of the Annotated Code of Maryland?
>
> What retroactive effect is to be given, if any, to Section 64 A of Article 101 of the Annotated Code of Maryland?
>
> Is Colin C. Colgan entitled to benefits under the Workmen's Compensation Act of Maryland? "

Appellee joined in that request in the event that we found the statute to be constitutional.

We decline to decide those issues for the reason that the

---

5. Ch. 322, Laws of 1965.

agreed statement of facts upon which the cause was presented here may not, indeed probably will not, permit a definitive answer to those issues. Moreover, to discuss such issues on this record would be to usurp the functions of the Medical Board for Occupational Diseases, the Workmen's Compensation Commission and the Circuit Court for Prince George's County. We decline to adopt such a course.

> *Reversed and remanded for consideration as for an occupational disease.*
> *Costs to be paid by the appellee.*