BOARD OF COUNTY COMMISSIONERS FOR PRINCE
GEORGE'S COUNTY, MARYLAND *v.* COLGAN

[No. 143, September Term, 1974.]

*Decided March 11, 1975.*

194

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE. ELDRIDGE and O'DONNELL, JJ.

*R. Roger Drechsler*, with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellant.

*Joseph F. McBride*, with whom were *Hooten, Fiege & McBride* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

The issue in this case is the constitutionality of Chapter 695 of the Laws of 1971, effective 1 July 1971, which added a new section 64A (the Act) to Maryland Code (1957, 1964 Repl. Vol., 1970 Cum. Supp.) Art. 101 (Workmen's Compensation). The title of the Act was as follows:

"AN ACT to add a new Section 64A to Article 101 of the Annotated Code of Maryland (1970 Supplement), title 'Workmen's Compensation,' to follow immediately after Section 64 thereof, to provide that there is a presumption of compensable occupational disease in cases of certain fire fighters sustaining temporary or total disability or death under certain conditions, and to provide that benefits may also be payable under a retirement system under certain conditions."

The text of the Act read:

"Any condition or impairment of health of any paid municipal, county, airport authority or fire control district fire fighter caused by lung diseases, heart diseases, or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

"Notwithstanding any provision of this article any paid fire fighter whose compensable claim results from a condition or impairment of health

caused by lung diseases, heart diseases or hypertension and has been suffered in the line of duty shall receive such benefits as are provided for in this article in addition to such benefits as he may be entitled to under the retirement system in which said fire fighter was a participant at the time of his claim. The benefits received under this article however, shall be adjusted so that the total of all weekly benefits shall not exceed one hundred percent of the weekly salary which was paid to said fire fighter.[1]

On 9 September 1971, Colin C. Colgan, a paid fire fighter employed by the Department of Fire Protection of Prince George's County, Maryland filed with Workmen's Compensation Commission a claim for compensation as a consequence of a heart attack sustained two days earlier. After a hearing and rehearing, the Commission disallowed Colgan's claim, but properly declined to pass upon the constitutionality of the Act.

On appeal to the Circuit Court for Prince George's County, an order was entered holding the Act to be unconstitutional and affirming the action of the Workmen's Compensation Commission. That court's finding of unconstitutionality was in substance posited upon the variance between the title of the Act, which referred to "a presumption of compensable occupational disease" and the body of the Act which, without referring to "occupational disease" made injuries caused by lung disease, heart disease or hypertension resulting in total or partial disability or death presumptively "compensable."

Colgan appealed to the Court of Special Appeals, which reversed the order of the circuit court and remanded the case "for consideration as for an occupational disease," *Colgan v. Board of County Comm'rs*, 21 Md. App. 331, 320 A.

---

1. By Chapter 281 of the Laws of 1972, Maryland Code (1957, 1964 Repl. Vol., 1971 Cum. Supp.) Art. 101, § 64A was amended to include any paid state, municipal, county or airport authority police officer. Note also that Code, Art. 101, § 67 (6) has been amended by Chapter 671, § 1 of the Laws of 1973.

2d 82 (1974). We granted certiorari in order that we might review the decision of the Court of Special Appeals.

Prince George's County (the County), the petitioner here, would have us reverse the Court of Special Appeals for four reasons:

(i) The Act violates Constitution of Maryland Art. III, § 29;

(ii) The Act comes within the accidental injury provisions of the Workmen's Compensation Law;

(iii) The Act violates the equal protection provisions of the Constitution of the United States; and,

(iv) The Act is unconstitutionally vague.

(i)

Validity Under the Maryland Constitution

Judge Menchine, speaking for the Court of Special Appeals, described the background of this issue:

"Article III, Section 29 of the Constitution of Maryland [1867] reads as follows:

'The style of all Laws of this State shall be, "Be it enacted by the General Assembly of Maryland: " and all Laws shall be passed by original bill; and every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title; and no Law, nor section of Law, shall be revived, or amended by reference to its title, or section only; nor shall any Law be construed by reason of its title, to grant powers, or confer rights which are not expressly contained in the body of the Act; and it shall be the duty of the General Assembly, in amending any article, or section of the Code of Laws of this State, to enact the same, as the said article, or section would read when amended. And whenever the

General Assembly shall enact any Public General Law, not amendatory of any section, or article in the said Code, it shall be the duty of the General Assembly to enact the same, in articles and sections, in the same manner, as the Code is arranged, and to provide for the publication of all additions and alterations, which may be made to the said Code.'

" [The Act] came into being as Chapter 695 of the [Laws] of 1971. In the course of its passage through the Legislature, both the title and the body of the Bill . . . were amended. As introduced, the title of the bill had provided, *inter alia*, that its purpose was to 'establish certain medical conditions where the death or disability of a fire fighter is *presumed to be accidental* and as a result of his employment.' . . . An amendment to the title of the bill struck out the above quoted language and declared that its purpose was to 'provide that there is a *presumption of compensable occupational disease* in cases of certain fire fighters sustaining temporary or total disability or death under certain conditions.' . . .

"The body of the bill at introduction had contained the words: '*presumed to have been accidental* and to have been suffered in the course of his employment.' . . . By amendment in the course of passage the above quoted language was stricken and the following words substituted: '*presumed to be compensable under this Article* and to have been suffered in the line of duty and as a result of his employment.'[2]" [Emphasis in original.]

"2. Other amendments to the Bill and Title have no bearing upon the issue here presented."

Our decisions in *Clinton Vol. Fire Dep't v. Board*, 259 Md. 456, 270 A. 2d 778 (1970), and *Shipley v. State*, 201 Md. 96, 93

A. 2d 67 (1952) are dispositive of this issue. In *Clinton, supra,* at 472, we said:

> "If the challenged provisions in the body of the statute are germane to the subject described in the title so that a person reading the title could be fairly advised of the subject matter, then the title will be deemed to have complied with the constitutional requirement."

Earlier, in *Shipley, supra,* at 102, the standard to be applied in evaluating challenges to the constitutionality of a statute was set forth:

> ". . . [T]his Court has consistently held, with the great weight of authority in this country, that the purpose of Article 3, Section 29, of the Constitution is sufficiently fulfilled if the title of the legislation fairly advises the Legislature and the public, of the real nature and subject matter of the legislation sought to be enacted. In testing whether the title of a statute conforms to this constitutional requirement the courts are disposed to uphold rather than to defeat the constitutionality of a statute, and to hold that it cannot be declared unconstitutional unless it plainly contravenes the constitutional provision. A reasonable doubt in favor of its constitutionality is enough to uphold it."

We adopt the conclusion reached by Judge Menchine for the Court of Special Appeals:

> "In the subject case there is no repugnancy between title and body of the act. The body of the act provides that certain conditions may be 'compensated under this Article [101].' The title of the act in no way conflicts with that purpose. The title simply makes clear that the act should be interpreted as granting such benefits in accordance with the provisions of that article as they relate to occupational diseases."

(ii)

## The Act Comes Within the Accidental Injury Provision of the Workmen's Compensation Law.

Petitioner seeks to support this contention with the assertion that "Sec. 64A is placed following the provision dealing with accidental injury [Sec. 64] rather than following the provisions dealing with occupational diseases beginning with Sec. 22. . . ." We cannot accept this proposition.

Sections 64 and 64A both appear under the subheading entitled "Miscellaneous." While it is true that section 64A does not follow the provisions dealing with occupational diseases, it cannot be said that section 64A is so placed as to lead inevitably to the conclusion that its subject matter is limited to accidental injury. Although both sections deal with presumptions to be engaged in when applying the Workmen's Compensation statute and although section 64A directly follows section 64, section 64A is not a subsection of section 64. Added subsequent to the original statute, section 64A is an independent section; the designation "A" is only for placement purposes within the Article, and does not signify a complete subordination of the latter section to the prior.

Further evidence that this section does not deal with accidental injury is made clear by its title. *Mass Transit Administration v. Baltimore County Revenue Auth.,* 267 Md. 687, 298 A. 2d 413 (1973) and *Shipley v. State, supra,* 201 Md. 96, are controlling in this regard.

In *Mass Transit Administration v. Baltimore County Revenue Auth., supra,* we said at pages 695-96:

"That the title of an act is relevant to ascertainment of its [the Legislature's] intent and purpose is well settled. . . ."

In *Shipley, supra,* our predecessors said at page 103:

"A title which is descriptive to some extent must go

far to fix the understanding of its purpose among legislators and interested members of the public. 'Bills are sometimes read, especially the first time, by their titles only, and the titles only are spread upon the journal.' *Stiefel v. Maryland Institution for the Blind,* 61 Md. 144, 148 [1884]. And it is the main purpose of the constitutional provision to prevent enactment under a misconception by reason of a misdescriptive title. 'The object of the requirement of the Constitution is that legislators and the public may be informed by the title of the general nature of the provisions proposed to be enacted.' *Levin v. Hewes,* 118 Md. 624, 632, 86 A. 233, 235 [1912]. It follows that a restriction in the title must either confine the operation of the act to conform to that description, if such a construction is possible, or render the act void to the extent of the conflict. . . ."

We repeat here what was said in (i), *supra,* quoting from the opinion of the Court of Special Appeals:

"The title simply makes clear that the act should be interpreted as granting such benefits in accordance with the provisions of that article as they relate to occupational diseases."

(iii)

Equal Protection

We turn again to the opinion of the Court of Special Appeals, which dealt with this contention:

"Statutes conferring benefits upon firemen and fire fighters generally, have been sustained as a natural and reasonable classification within constitutional limits. In *Grosse Pointe Fire Fighters Association v. Village of Grosse Pointe,* 6 N.W.2d 725 (S. Ct. Mich. 1942), a statute authorizing grant of holiday time exceeding the allow-

ance to other municipal employees was sustained. [That] Court said at page 726:

' [The statute] applies in a statewide sense to every Michigan municipality, which maintains an organized paid or part paid fire department. A law of this type obviously need not apply, and probably in a practical sense could not be made to apply, indiscriminately to all employers or to all adult male employees. But the legislature may enact a law which is applicable to a specified class or classes of employers or employees, provided the classification is sustainable in reason. Particularly is this true of the State's power to regulate the affairs of its governmental units. We cannot say the statutory provision under consideration is invalid as being "special" or local legislation or that it is "capricious and unreasonable class legislation." It applies in a state-wide manner to all "municipalities which maintain or may hereafter maintain an organized paid or part paid fire department." '

"In *Sullivan v. City of Omaha*, 21 N.W.2d 510 (S. Ct. Neb. 1946), the constitutionality of a statute conferring special pension benefits to firemen was sustained, the Court saying at page 512: 'We think that appellees as firemen in a metropolitan city constitute a reasonable classification of persons for purposes of legislation concerning them.' See also: *Iben v. Borough of Monaca*, 43 A. 2d 425 (Superior Court of Pa. 1945); *Geary v. Retirement Board*, 231 A. 2d 743 (S. Ct. Pa. 1967).

"Fourteen states have enacted legislation by which the disability or death of fire fighters or police, or both, caused by lung or heart disease is presumed to be employment connected.[3]

"3. [These states appear in Colgan v. Board of

County Comm'rs, 21 Md. App. 331, 339-40, 320 A. 2d 82, 87 (1974).]

"The constitutionality of such statutes has been put in issue in appellate litigation in three states.[4]

"4. Similar statutes have been applied by appellate courts in cases where the constitutional issue apparently was not raised. See: *Cichecki v. Hamtramck Police Department*, 170 N.W.2d 58 (S. Ct. Mich. 1969); and *Sperbeck v. Dept. of Industry*, 174 N.W.2d 546 (S.Ct. Wisc. 1970). In *Sperbeck*, the Supreme Court of Wisconsin used language reasonably implying that the Court gave consideration to the constitutional aspects of such legislation, when it said at page 549:

"The legislature — faced with the decision of whether to enact sec. 891.45, Stats. — decided to create the presumption and as already stated, it acted reasonably in doing so. Evidence which only attacks the rationale of the statute, without exposing the cause of death of a particular claimant, does nothing more than question the wisdom of the legislature. As the trial court stated, "If the Legislature has acted unwisely upon the basis of insufficient information, the remedy is to go back to the Legislature." '

"*Kellerman v. City of St. Paul*, 1 N.W.2d 378 (S. Ct. Minn. 1941) thus disposed of the issue at page 380:

'Relator contends that the 1939 amendment as applied to this case is unconstitutional in that it violates the equal protection clauses of the Federal and State Constitutions and the prohibition against special legislation found in the State Constitution. Legislation in its very

nature involves classification, and a statute will be held unconstitutional on that ground only where the class it necessarily establishes has no substantial basis in fact. Much is left to the sound discretion of the legislature. The apparent high percentage of occurrence of coronary sclerosis among firemen demonstrates that the legislature was not arbitrary in providing for them as a class. Relator asserts that other occupations were shown to be susceptible to coronary sclerosis. The legislature "is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may 'proceed cautiously, step by step,' and 'if an evil is specially experienced in a particular branch of business' it is not necessary that the prohibition 'should be couched in all-embracing terms.' " The statute is undoubtedly constitutional.' [Internal citations omitted.]

\* \* \*

"North Carolina reached a contrary constitutional conclusion. In *Duncan v. City of Charlotte*, 66 S.E.2d 22 (S.Ct. N.C. 1951) the statute had provided *inter alia* that coronary thrombosis and other heart ailments should be deemed compensable occupational diseases as to active members of city fire departments. The statute was held to violate Article I Section 7 of the Constitution of North Carolina which provides that:

'No man or set of men are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services.'

The Court said at page 26:

'The defendant's challenge is well taken. In

reality, the statute seeks to confer upon firemen a special privilege not accorded other municipal employees, nor to employees in private industry. It places on the taxpayers a burden which the Constitution declares it was not intended for them to bear. * * * '

"We note that the North Carolina decision was bottomed upon a State Constitution differing materially from our own and bearing no reasonable analogy to the Fourteenth Amendment. The Declaration of Rights of Maryland, on the other hand, is equated with that amendment. [*Horace Mann League v. Board,* 242 Md. 645, 220 A. 2d 51 (1966).] Thus, in ruling upon constitutional attacks on statutes passed under the police power, Maryland Courts had used much the same reasoning as did the Court in *Kellerman, supra.*

"We apply here what was said in *Clark v. Tawes,* 187 Md. 195, 201, 49 A. 2d 463, 466 [1946]:

' * * * This is a reasonable classification which the Legislature has an entire right to make. It is not for us to say whether it is the best classification or not. It is a matter within the discretion of the Legislature which it can exercise without judicial hindrance.'

"Only when the distinctions and classifications made by statute are without reasonable foundation is there a legislative departure from its constitutional powers. *Celanese Corp. v. Davis,* 186 Md. 463, 473, 47 A. 2d 379, 384 [1946].

"In the subject statute the legislature has seen fit to grant to fire fighters a presumption that a disability arising from lung and heart diseases was suffered in the line of duty and as a result of their employment. There is general public knowledge that fire fighters, in the course of their daily activities, are exposed to inhalation of smoke or

noxious fumes and are subjected to unusual stresses and strains. An adequate constitutional base exists here.

"Suggested constitutional impediments grounded upon absence of due process and denial of equal protection of the laws require rejection in the light of *Allied American Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 150 A. 2d 421 [1959]. As to 'due process' the Court said at [219 Md. 617, 150 A. 2d 427-28]:

'The due process clause does not * * * inhibit a state from insisting that all contract and property rights are held subject to the fair exercise of the police power. *Atlantic Coast Line v. Goldsboro,* 232 U. S. 548, 558, 58 L. Ed. 721. The exercise of the power is fair when the purpose is a proper public one and the means employed bear a real and substantial relation to the end sought and are not arbitrary or oppressive. The Supreme Court said in *Erie R. R. Co. v. Williams,* 233 U. S. 685, 700, 58 L. Ed. 1155: "It is hardly necessary to say that cost and inconvenience (different words, probably, for the same thing) would have to be very great before they could become an element in the consideration of the right of a State to exert its reserved power or its police power." There are many holdings that enforcement of uncompensated obedience to a regulation passed in the legitimate exercise of the police power is not a taking without payment of just compensation. *N. O. Public Service v. New Orleans,* 281 U. S. 682, 687, 74 L. Ed. 1115; *Chicago, Burlington & Q. R. Co. v. Chicago,* 166 U. S. 226, 255, 41 L. Ed. 979; *Noble State Bank v. Haskell,* 219 U. S. 104, 110, 55 L. Ed. 112; *Capital Transit Co. v. Bosley, supra,* at page 514 of 191 Md.

'Most governmental regulations of business necessarily cause inconvenience, effort and financial burdens for which no compensation is, or need be, paid. These uncompensated efforts are a part of the cost of participating in the complications of modern life and society. They may reduce the net return of the enterprise but, of itself, that brings about no constitutional weakness in the legislation that demands them. *Day-Brite Lighting, Inc. v. Missouri,* 342 U. S. 421, 96 L. Ed. 469.'

As to 'equal protection' the Court said at [219 Md. 623, 150 A. 2d 431]:

'We * * * pass to consideration of equal protection. Generally, one who attacks a regulation under the police power on the ground that it violates due process adds a claim that it is a denial of equal protection, and, although the scope of the two clauses is not coterminous, usually his case stands or falls on the strength or weakness of his due process argument. Except where discrimination on the basis of race or nationality is shown, few police power regulations have been found unconstitutional on the ground of denial of equal protection, which may be what prompted the Supreme Court to call the equal protection clause the "usual last resort of constitutional arguments." The appellants can fare no better, we think, than do most on this point.

'The constitutional need for equal protection does not shackle the legislature. It has the widest discretion in classifying those who are to be regulated and taxed. Only if the grouping is without any reasonable basis, and so entirely arbitrary, is it forbidden. Abstract symmetry or mathematical nicety are not requisites. The selection need not depend on scientific or

marked differences in things or persons or their relations. If any state of facts reasonably can be conceived that would sustain a classification, the existence of that state of facts as a basis for the passage of the law must be assumed. The burden is on him who assails a classification to show that it does not rest on any reasonable basis.'

"In *King Furniture Mfg. Co. v. Thompson*, 248 Md. 682, 238 A. 2d 231 [1968], the statute introducing a 'serious disability'[5] concept into the workmen's compensation law was attacked upon constitutional grounds. We find apposite to the subject case what was said in *King* at [248 Md. 689, 238 A. 2d 234-35]:

'The third contention that the act violated the respective due process clauses of the state and federal Constitutions is * * * the claim that the method chosen for determining who is to be included within the category is unreasonable.

'Since compensation laws like other laws are presumed to be constitutional and are construed in such way as will carry out the objectives of their enactment, the burden of showing the unreasonableness of a classification is on the party attacking it.'

We find no such showing here.

"5. Ch. 322, Laws of 1965."

Finally, as Colgan points out, not only may the Legislature properly determine that fire fighters are exposed to health hazards not shared by other government employees, but it may also rationally determine that full-time fire fighters are subject to greater hazards than unpaid fire fighters: volunteers and those whose principal duties do not involve fighting fires.

(iv)

Vagueness

Here, the principal thrust of the County's argument is that the Act's use of the word "compensable," which is not defined in Code, Art. 101, makes the Act unconstitutionally vague. We do not agree. Webster's New International Dictionary of the English Language 545 (2d ed. 1944) defines "compensable" as "That is to be compensated or entitles to compensation." Clearly, the Act addressed itself to compensable disease, which is as meaningful, in the workmen's compensation context, as compensable injury. Moreover, except in rare instances, it is only a criminal statute which may be attacked for vagueness, *Maryland-Nat'l Cap. Park & Planning Comm'n v. Rockville*, 272 Md. 550, 559, [*Maryland-Nat. Cap. P. & P. C. v. Mayor & C. of Rockville*,] 325 A. 2d 748, 753-54 (1974). The Act would survive such a challenge, if it were applicable.

In *Richards Furniture Corp. v. Board*, 233 Md. 249, 196 A. 2d 621 (1964), where Anne Arundel County's Sunday closing law was attacked as unconstitutionally vague, our predecessors said:

" [W]e do not find the statute vague or indefinite in a constitutional sense. It is unnecessary to elaborate upon this point in great detail. The Act is couched in plain and simple language, which may be easily understood by persons of ordinary intelligence. This is all that is required of a statute in order to prevent it from being vague and indefinite in a constitutional sense." (citing cases) 233 Md. at 264.

More recently in *Giant of Maryland, Inc. v. State's Attorney*, 267 Md. 501, 298 A. 2d 427 (1973), the test for vagueness was similarly stated:

"But the imperfect drafting of § 534H does not compel a holding that the statute is vague and indefinite in a constitutional case .... On the

contrary ... we think that, as written it is sufficiently explicit to enable a person of ordinary intelligence to ascertain with a fair degree of precision what it prohibits and what conduct on his part will render him liable to its penalties; it does not, therefore, affront the constitutional guaranties of due process." (citing cases) 267 Md. at 514-15.

We think the Act before us meets this test. The County's other queries can be met by regarding the Act as an extension of the benefits provided by statute for occupational disease and by harmonizing it with those provisions of Article 101.

Finally, the parties hold contrary views as regards the nature of the presumption raised by the Act. The County says that it is a rebuttable presumption of fact; Colgan, that it is a rebuttable presumption of law. Following on the heels of Section 64 of Article 101, which provides that the presumptions set forth in that section are to be presumed "in the absence of substantial evidence to the contrary," it seems obvious that the use of the phrase "shall be presumed" in the Act, without contrary qualification, should be read in the same fashion. Consequently, the presumption, although rebuttable, is one of fact. *See American Ice Co. v. Fitzhugh,* 128 Md. 382, 390-91, 97 A. 999, 1001-02 (1916); 29 Am. Jur. 2d *Evidence* §§ 161-165, at 195-204 (1967); 31A C.J.S. *Evidence* §§ 115-117, at 196-212 (1964).

> *Order of Court of Special Appeals reversing order of Circuit Court for Prince George's County and ordering remand of case to Workmen's Compensation Commission affirmed; costs to be paid by petitioner.*