LINWOOD L. CLARK *v.* J. MILLARD TAWES,
COMPTROLLER OF THE STATE OF MARYLAND

[No. 11, October Term, 1946.]

*Decided October 30, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*George B. Woelfel* for the appellant.

The Court declined to hear argument for the appellee; *William Curran, Attorney General, Hall Hammond, Deputy Attorney General,* and *J. Edgar Harvey* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellant was appointed an associate judge of the Fifth Judicial Circuit of this State and served as such under appointment from May 20, 1935, to December 20,

1938. He was never elected. At the time of his retirement, he was not quite 64 years of age. He reached the age of 70 on March 21, 1945. During the period of his service there was in effect Chapter 236 of the Acts of 1904 which provided, among other things, that every judge of the circuit court for any of the counties, attaining the age of 70 years while in office, after having served the 10 preceding consecutive years, and every such judge who had served upon the bench 15 consecutive years and had reached the age of 70 and every person who had heretofore been elected and had served as judge and was no longer in office and had attained the age of 70 years, or when he should attain said age, should be entitled to a salary of $2,400 per annum. Under this Act Judge Clark would not have been entitled to any salary or pension, or retirement compensation at any time.

In 1939, by Chapter 751, the Legislature amended the Act of 1904 and granted pensions to judges attaining the age of 60 years while in office, after having served the 20 preceding consecutive years. Under this Act Judge Clark would not have qualified for a pension. Chapter 390 of the Acts of 1941 provided pensions of $3,000 to judges who had reached the age of 70 years after having been in office 10 years or more and to those attaining the age of 60 years while in office after having served the 20 preceding consecutive years. The Legislature then added the provision, "If for less than five years, two thousand dollars per annum." It is contended by appellant that under this provision he would have been entitled to a yearly pension of $2,000 upon arriving at 70 years of age. The wording of this statute is somewhat ambiguous, but it is not necessary for us to construe it because it has been repealed by the Act now in force, Chapter 966 of the Acts of 1943.

This last Act repeals the whole of Section 48 of Article 26 of the Code, title "Courts," sub-title "Pensions of Judges," and enacts in lieu thereof a new Section 48 which changes the method of giving pensions or retirement pay to judges by restricting it to elected judges

and by calculating the amount at $300 for each year or any part thereof of active service including both that served under appointment, if any, and that served after election. The Act is made applicable to all elected judges already retired from public service. In Section 2 of the Act there is a proviso that nothing in the Act shall be construed to reduce the amount of any pension *being received* by any judge on May 31, 1943. The Act of 1943 does not provide for pensions to appointed judges. The only exception is the continuance in force of a pension already being received. Judge Clark does not come within the wording of this exception as he was not receiving any pension on May 31, 1943. He would not, under any construction of the previous pension acts have been eligible to receive a pension until March 21, 1945, when, as we have already stated, he reached the age of 70.

It is contended by the appellant that this was a mistake made by the Legislature which has apparently overlooked the appellant's situation, and that the Legislature in 1945 recognized this fact by passing a bill known as Senate Bill No. 123, which attempted to add a proviso to Section 2 of Chapter 966 of the Acts of 1943 to the effect that nothing contained in it should be construed to deprive any judge appointed prior to May 1, 1943, of the pension provided for by the Act of 1941. Such pensions were directed by the 1943 proviso to be paid to such former judges from the time when they reached the age of 70 years. This Act contained an explanatory clause which read, "Whereas, Section 2 of said Act '(Chapter 966 of the Acts of 1943)' relating to certain former judges who would be entitled to receive pensions, unintentionally eliminated a certain class of judges."

This bill never became part of the Acts of 1945 as it was vetoed by the Governor. It is unnecessary for us to consider whether we could determine the legislative intention of the General Assembly of 1943 by an explanation given by the same Legislature again sitting in 1945, in a proposed bill which never became an Act. If we could accept the statement in Senate Bill 123, that

the Legislature had not intended to exclude certain appointed judges, including the appellant, from the benefit of pensions, we would also have to accept the statement contained in the bill that it did exclude them. We do not, however, have to depend upon this legislative construction because the Act of 1943 itself very clearly does exclude them by repealing all of the provisions of the Act of 1941 and only excepting from the repeal those pensions *being received* by any judge on May 31, 1943. .The appellant contends that these words "being received" were meant to apply, not only to judges who were actually receiving pensions, but were intended to cover those who would subsequently receive pensions upon reaching the age of 70. He lists seven former appointed judges, including himself, of whom five were at that time receiving pensions, although all of them were in active service for less time than he was. The sixth appointed judge listed has not yet reached the age of 70. He alleges the fact that he is the only former judge of pensionable age in the State of Maryland who is denied pension benefits, and states that if the Act of 1943 is construed as it is written, it makes an unreasonable and arbitrary classification between judges, similarly qualified, who have performed similar services.

We have no authority, in a case where the Legislature has spoken clearly, to distort its words and to usurp the function of the legislative branch of the government by making judicial law. It is true that real intent must prevail over literal intent. *State v. Petrushansky,* 183 Md. 67, 36 A. 2d 533, and cases there cited. But that rule of construction is adopted only when the literal words of a statute say something that the Legislature could not possibly have meant. It does not apply when the only bases for a construction other than a literal one are either that the Legislature should not have said what it did, or that it would not have said it, had it been in possession of all the facts. We cannot assume to say what the Legislature should have said, nor can we say whether it knew the facts or not, nor whether it

would have decided differently had it known them. All we can determine in this case is what the Legislature did say. And there is no ambiguity here.

The Legislature is the agency of the State which determines what is to be done with the finances of the State, subject, of course, to the provisions of the budget amendment. The class of statutes usually known as retirement acts which provide pensions for different classes of State employees need not be alike as to all employees. They are not considered as charitable or benevolent appropriations. They are founded on supposedly valuable services actually rendered to the State over a period of years and are a part of the inducement which leads competent persons to give up the greater emoluments of private employment for lesser compensation by the State. This is usually stated to be peculiarly applicable to judges who are generally able to make more in private practice than they can on the bench, and who thereby give up all chance of further increase in their estates for a fixed salary which ends when they reach a certain age. To encourage competent lawyers to become judges it is the policy of this State, as well as of the Federal Government and of other jurisdictions, to provide a reduced compensation or a retirement salary or a pension to continue during the life of a retired judge. A judge appointed under our constitutional provision must anticipate that he will become a candidate at an election to be held within a short period of time. If he is advanced in age, he may desire to end his years of devotion to the law with the honor of sitting upon the bench for a brief period without attempting to be elected. In the last class of cases there would, of course, be no reason for a pension. In the first class of cases, the appointed judge would be entitled to a pension if he succeeded in being elected, but if he does not command sufficient prestige among the people for them to desire to continue his service, it seems fairly obvious that the State should not continue to support him. The present judicial pension system is intended to take care only of

those judges who have been selected by the people as fit to sit in judgment. This is a reasonable classification which the Legislature has an entire right to make. It is not for us to say whether it is the best classification or not. It is a matter within the discretion of the Legislature which it can exercise without judicial hindrance.

The exception in the Act of 1943, intended to retain pensions to people who have become entitled to them under previous laws, is not rendered invalid or discriminatory because it does not take care of the appellant and the other former judge who, however, has not yet reached the pension age. The Legislature might have reasonably concluded that they had a number of years left for activity in the practice of the law, and would not need a pension when they reached the retirement age. Whether that was the cause of the legislative failure to include them in the exception, whether there was some other reason, or whether the Legislature did not know about them, is again not for us to say. The Legislature was within its power in not excepting them. It had grounds for making a distinction between them and those judges who were already receiving pensions. It clearly did not except them and there is, therefore, no law under which the appellant can claim that a pension is due him. If he has a case which appeals to the conscience of the General Assembly he can take that case to that forum. We can do nothing for him on the state of the law as it now exists.

This case was instituted by way of a petition for mandamus filed against the Comptroller of the State, asking that the latter be required to pay appellant $2,000 a year, accounting from March 21, 1945. The Comptroller demurred, and the lower court sustained the demurrer and dismissed the petition. As we find no error in this ruling, it will be affirmed.

*Order affirmed, with costs.*