556 A.2d 726

**Thomas L. CROWDER**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

**No. 999, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

April 27, 1989.

Benjamin Lipsitz (Aaron Kadish, on the brief), Baltimore, for appellant.

L. William Gawlik, Asst. Sol. (Sheldon H. Press, Chief Sol., on the brief), Baltimore, for appellees.

Argued before ALPERT, KARWACKI and POLLITT, JJ.

POLLITT, Judge.

The issue in this case is whether Baltimore City should pay Thomas L. Crowder Ordinary Disability Retirement Benefits or Accidental Disability Retirement Benefits. A Hearing Examiner for the Employees' Retirement System found that Mr. Crowder "is not eligible for an Accidental Disability Retirement," but "is eligible and should be awarded an Ordinary Disability Retirement," on the basis that Mr. Crowder had not incurred "a 75% anatomical loss of use of his back." On appeal to the Circuit Court for Baltimore City, that court (Cardin, J.) affirmed the decision of the Employees' Retirement System. Crowder appealed to this Court, presenting three questions:

 1. Whether the Baltimore City Code provision requiring 75% anatomical loss of use of designated bodily functions or parts (in this instance of Crowder's back) to qualify for accidental disability retirement is unconstitutional and invalid, as applied to Crowder in this case;

 2. Whether the City was entitled to question the extent of Crowder's loss of use of his back when in other proceedings, including those before its Civil Service Commission, it obtained Crowder's dismissal from his job as an automobile mechanic on the basis that he was 100% disabled from performing the duties of his job classification; and

 3. Whether Crowder satisfied the 75% anatomical loss of use criterion.

### Facts

Appellant was employed by the City as an automotive mechanic in 1973 and entered the retirement system in

1975. At the time of his application for retirement he was a class C member and was 46 years of age. On 23 February 1982, while moving 55 gallon drums, he slipped in mud and oil and fell, sustaining a herniated disc in his back.

Appellant was examined on the day of the accident in the emergency room of Mercy Hospital. The "impression" noted on the records was "lumbar sprain" with instructions to apply "[h]eating pad to affected area" and "light duty." Mr. Crowder was referred to the City's Medical Services Division and subsequently to Dr. Russo, a neurological surgeon. Dr. Russo diagnosed appellant's injury as a herniated disc and a diskectomy was performed. Appellant remained under Dr. Russo's care until 17 August 1982 when he was discharged and told he could return to work. On 28 October 1983, Dr. Russo informed Dr. Altieri of the City's Office of Occupational Medicine that Mr. Crowder had again returned for evaluation due to a recurrence of symptoms. Dr. Russo subsequently ordered a myelogram performed, which displayed a disc defect. Further surgery was suggested but appellant declined. Consequently, Dr. Russo found there was "nothing further from the neurosurgical standpoint that [he could] offer ... [Mr. Crowder]." Dr. Russo opined that "[i]f [Mr. Crowder] can be returned to work duties without excessive bending, climbing and lifting, he should be able to function quite well."

On 15 April 1985, after appellant had missed work or had been placed on light duty on several occasions due to his injury, his superintendent requested that appellant be given a special medical examination. This examination was performed by Dr. Altieri, who reported to the Department of Public works that

Mr. Crowder is at great risk of further injury should he lift, pull, carry or push more than 30 pounds.... He does not favor further surgery and even if this were performed, Mr. Crowder's condition would not change, i.e., he would still be at great risk of further injury. He has reached maximum improvement at this time.

Following this report, on 13 September 1985, Thomas F. Rieley, Chief of the Department of Public Works, wrote to appellant stating:

> I have received the results of your special examination performed by the Occupational Medicine Clinic. The results indicate that you are medically unable to perform your full duties as an Automotive Mechanic I.
>
> I suggest that you contact the Employee's [sic] Retirement System, Room 640 City Hall, within the next two weeks concerning your eligibility for disability retirement consideration. I request that you advise me of the results of your visit to the Employees' Retirement System by September 27, 1985.

On 7 October 1985, Mr. Rieley wrote to appellant again stating in part:

> As a result of the special examination you had at the Division of Occupational Medicine a determination was made that you are "no longer capable of performing his regular job duties without great risks of further injury." A further determination was made that you "have reached maximum improvement at this time."
>
> On September 27, 1985 you advised me that you had reported to the Employees [sic] Retirement System and received benefits information.
>
> This office has no discretionary authority in situations of this kind when the City's medical personnel have made a definitive judgement [sic]. The only option available is for the employee to file for whatever retirement benefits are available. Failing this, we have no choice but to terminate the employee from service with the City of Baltimore.
>
> I have been advised that you have not filed for your retirement benefits. As such, I must regretfully advise you that your service will be terminated effective October 8, 1985. This termination is being effected under the terms of Civil Service Rule 56(b) which states:

"That the employee has some physical ailment or defect which incapacitates him for the performance of the duties of his position."

A hearing regarding appellant's termination was held before a hearing officer of the City's Civil Service Commission, the result of which was a finding that "there is credible evidence in the instant case that could support termination, and he must recommend that the termination be upheld." The Civil Service Commission concurred in this result.

A hearing subsequently was held before the examiner for the Employees' Retirement System of Baltimore City regarding Mr. Crowder's eligibility for Class C Accidental Disability Retirement. A report from Dr. Altieri stated that "Mr. Crowder can no longer preform [sic] the duties for which he was hired and should be retired."

The distinction between Ordinary Disability Retirement and Accidental Disability Retirement is set forth in Article 22, § 9 of the Baltimore City Code (1983 Repl.Vol., 1986 Supp.), the pertinent parts of which provide:

(i) *Ordinary Disability Retirement Benefit.* Any Class C Member who has acquired five (5) or more years of Service and who has not attained the age of sixty (60), and who has been determined by a Hearing Examiner to be mentally or physically incapacitated for the further performance of the duties of the Member's job classification in the employ of the City, and that such incapacity is likely to be permanent, may be retired on an Ordinary Disability Retirement.

\* \* \* \* \* \*

Upon retirement for Ordinary Disability, a Member shall be entitled to receive a Maximum Pension equal to the pension determined in accordance with Section 9(e) as if he remained employed by the City until the Normal Retirement Date, age sixty-five (65), multiplied by the greater of:

(i) a fraction, the numerator of which shall be the number of years (and fractions thereof) of his Service

prior to the time he ceased to be employed by the City, and the denominator of which shall be the number of years (and fractions thereof) of Service that he would have had if he had continued to be employed by the City until his Normal Retirement Date, age sixty-five (65); or

(ii) one-half.

(j) *Accidental Disability Retirement Benefit.* Any Class C Member may file a claim within not more than five (5) years of the date of an accident which, at the time of the claim, resulted in the Member's sustaining any of the impairments listed in the Schedule below. If such impairment has been determined by a Hearing Examiner to be as the direct result of bodily injury through such accident independent of all other causes and independent of any preexisting physical or medical conditions, job-related or otherwise, occurring while in the actual performance of duty with the City at a definite time and place, without wilful negligence on the part of the Member, and the Hearing Examiner certifies that such impairment has permanently incapacitated the Member for the further performance of the duties of the Member's job classification in the employ of the City, the Member shall be retired on an Accidental Disability Retirement Benefit.

(1) Upon retirement on Accidental Disability, said Class C Member shall be entitled to receive a Maximum Pension Benefit in an amount equal to sixty-six and two-thirds percent (66⅔%) of the Member's Average Final Compensation.

(2) Notwithstanding anything to the contrary, should a Class C Member not be eligible for Accidental Disability Benefits solely because the degree of his impairment did not meet the standards as listed in the Schedule below, such Member regardless of his years of Service shall be eligible for Ordinary Disability Retirement Benefits, subject to all other conditions thereof.

(3) *Schedule of Impairments.*

(i) A seventy-five percent (75%) anatomical loss of the use of any one (1) of the below; or a fifty percent (50%) or more anatomical loss of each of two (2) or more of the below:

(1) Speech

(2) Sight

(3) Neck

(4) Back

(5) Vital bodily organ

(6) A part of the central nervous system

(7) Arm

(8) Leg

(9) Shoulder

(10) Hearing

(11) Mentally incapacitated whereby a Member applies for and is granted a disability benefit under the Federal Old Age Survivor's and Disability Insurance Act.

The record reveals that appellant's counsel admitted during the hearing before the Hearing Examiner that Mr. Crowder's injuries did not amount to a 75% anatomical loss. Counsel's comments were as follows:

There is no indication in the record to my knowledge that his disability extends to 75 percent of his body.

\* \* \* \* \* \*

As far as I know, he doesn't show 75 percent disability. The legal issue would then arise as to that validity of that provision.

\* \* \* \* \* \*

[I]n my submission the record supports a finding that he was 100 percent disabled to do this job. It doesn't probably support a finding that he was 75 percent disabled under these categories that are set up, but if you are going to judge it or measure it against his job description, I think he is by the city's own doctor's report

and everything else, actually 100 percent disabled to do the jobs.

In addition it was stated that the Workmen's Compensation Commission awarded appellant a 20 percent disability for the industrial loss of use of his body. It is evident from the record that although Mr. Crowder was totally unable to perform his job, there was no proof that the injuries to his back amounted to a 75% anatomical loss.

*Scope of Review*

Our scope of review is provided in Art. 22, § 9(p) of the Baltimore City Code (1983 Repl.Vol., 1986 Supp.) which states: "The final determination of the Hearing Examiner shall be presumptively correct and shall not be disturbed on review except when arbitrary, illegal, capricious or discriminatory." As we previously have held, a provision such as this limits "a reviewing court's power to reverse administrative actions and follows the general policy regarding review of administrative agency decisions. [citations omitted] Nevertheless, it does give the court the power to reverse an administrative decision that is arbitrary, capricious, illegal or discriminatory." *Board of Trustees of the Fire and Police Employees Retirement System of the City of Baltimore v. Lenwood Powell*, 78 Md.App. 563, 554 A.2d 440 (1989). *See also, Heaps v. Cobb*, 185 Md. 372, 45 A.2d 73 (1945).

I

Appellant argues that *Baltimore City Code, supra* Article 22, § 9(j)(3) is unconstitutional as it seeks "to differentiate between persons in the same circumstance ... who are disabled by accidental injuries from performing the duties of their jobs ... who meet the criterion of 75% loss of use of the bodily functions and body parts ... and those who do not." Stated otherwise, appellant's argument is that the 75% anatomical loss required to qualify for accidental dis-

ability is arbitrary, and as such, violates his rights to equal protection and due process of law.

He submits that the 75% anatomical loss provision discriminates between "those City employees who are accidentally totally disabled from performing the duties of their City jobs by an impairment which does not attain the percentage qualification ... and those City employees who also are so totally disabled, but whose impairments fall within the qualifying conditions prescribed by that section." The statute does classify disabilities by certain degrees of anatomical loss, which is the method the legislature devised to determine who will be included in the appropriate categories. As with any classification system, inevitably there are persons who will attain the required standards and those who will not. As Chief Judge Marbury stated for the Court of Appeals, regarding a challenge to a pension statute, "[t]he class of statutes usually known as retirement acts which provide pensions for different classes of State employees need not be alike as to all employees." *Clark v. Tawes*, 187 Md. 195, 200, 49 A.2d 463, 465 (1946). Likewise, the statute here makes provision for disability benefits, but need not provide for all classes alike.

■ We find appropriate an analogy to the workmen's compensation cases which have involved constitutional challenges to certain categories of disability. The Court of Appeals has stated that workmen's compensation cases are frequently helpful in interpreting pension cases. *Board of Trustees v. Grandinetti*, 269 Md. 733, 309 A.2d 764 (1973); *Heaps v. Cobb, supra*, 185 Md. at 383, 45 A.2d at 78. *In Bd. of Co. Comm'rs v. Colgan*, 274 Md. 193, 334 A.2d 89 (1975), the question concerned the constitutionality of a new Act added to the Workmen's Compensation statute providing for additional compensation for fire fighters under certain circumstances. The Court found that the Legislature properly could determine that certain fire fighters were exposed to greater hazards and thus any reasonable classifications made were acceptable. The Court said:

"In *King Furniture Mfg. Co. v. Thompson*, 248 Md. 682, 238 A.2d 231 [1968], the statute introducing a 'serious disability' concept into the workmen's compensation law was attacked upon constitutional grounds. We find apposite to the subject case what was said in *King* at [248 Md. 689, 238 A.2d 234–35]:

'The third contention that the act violated the respective due process clauses of the state and federal Constitutions is * * * the claim that the method chosen for determining who is to be included within the category is unreasonable.

'Since compensation laws like other laws are presumed to be constitutional and are construed in such way as will carry out the objectives of their enactment, the burden of showing the unreasonableness of a classification is on the party attacking it.' [footnote omitted] We find no such showing here...."

*Colgan, supra,* 274 Md. at 208, 334 A.2d at 97 (*quoting King Furniture v. Thompson,* 248 Md. 682, 689, 238 A.2d 231, 234–35 (1968)). The same analysis is appropriate to the classification system here. We must presume the anatomical disability statute is constitutional unless the method of classification is shown to be unreasonable. As the Court of Appeals stated:

[U]nless the distinctions and classifications made by statutes are obviously without reasonable foundations in conditions to be dealt with, there is no departure from constitutional powers.

*Celanese Corporation v. Davis,* 186 Md. 463, 473, 47 A.2d 379, 384 (1946).

We perceive no arbitrariness in the anatomical loss provisions of this statute. To the contrary, the system appears to be a reasonably based attempt to structure compensation benefits in accord with the severity of the injuries sustained.

This is a reasonable classification which the Legislature has an entire right to make. It is not for us to say

whether it is the best classification or not. It is a matter within the discretion of the Legislature which it can exercise without judicial hindrance.

*Clark v. Tawes, supra,* 187 Md. at 201, 49 A.2d at 466.

## II

 Appellant next argues that the city may not now assert that he did not meet the "75% impairment criterion" because it previously had taken the position before the Civil Service Commission "that he was 100% impaired from performing the duties of his job." There is no merit in this contention. The two positions are not inconsistent. Loss of capacity to perform a particular job and anatomic disability are not the same.[1] For the same reason, res judicata does not apply. One element required for the application of the principles of res judicata is that the issue determined in a previous proceeding be identical to that presented in a subsequent proceeding. *Cicala v. Disability Review Bd.,* 288 Md. 254, 418 A.2d 205 (1980).

## III

As we have observed previously, appellant's counsel admitted before the Hearing Examiner that he did not meet the test of 75% anatomical loss of use of his back. His attempt to resurrect the issue now is simply a rehash of his previous arguments.

JUDGMENT AFFIRMED; APPELLANT TO PAY COSTS.

---

**1.** An example of the distinction, cited by appellee in argument before the circuit court, is when a policeman breaks his "trigger" finger. Such an injury may render the officer unable to perform his duties but result in very little anatomical loss. The inconsistent positions, if any, are those taken by appellant before the two administrative bodies. He argued to the Civil Service Commission that he was not disabled and was capable of returning to work, while his position now is that he is 100% disabled.