37 A.3d 1064

**EMPLOYEES' RETIREMENT SYSTEM OF the CITY OF BALTIMORE**

v.

**Sylvester DORSEY.**

**No. 2818, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

Feb. 10, 2012.

Herbert Burgunder, Jr. & William R. Phelan, Jr. (George A. Nilson, City Solicitor, on the brief), Baltimore, MD, for appellant.

Mitchel M. Gordon, Baltimore, MD, for appellee.

Panel: ZARNOCH, GRAEFF, CHARLES E. MOYLAN, JR. (Retired, Specially Assigned), JJ.

GRAEFF, J.

This appeal involves an application by Sylvester Dorsey, appellee, for line-of-duty disability retirement benefits with the Employees' Retirement System of the City of Baltimore ("ERS"), appellant. A hearing examiner denied Mr. Dorsey's application. On review, the Circuit Court for Baltimore City reversed that ruling and granted Mr. Dorsey's application for line-of-duty disability retirement benefits.

ERS appealed. It presents two questions for our review, which we have rephrased as follows:

1. Did the lower court err in reversing the administrative decision denying Mr. Dorsey line-of-duty disability retirement due to a preexisting condition?

2. Did the lower court err in granting the application for line-of-duty disability retirement because the power to award retirement benefits is reserved for the ERS?

For the reasons set forth below, we shall affirm, in part, and vacate, in part, the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

Sylvester Dorsey began working as a school police officer in August 2005. On August 31, 2007, while on-duty, Mr. Dorsey was involved in an altercation with a parent, during which the parent and a student attacked him with metal chairs. He suffered back injuries, bruises, and a deep laceration to his arm that required 38 stitches. Mr. Dorsey was on leave for several weeks, and he eventually returned to light-duty, which involved desk work, communications, and handling reports. He never returned to full-duty.

After the incident, Mr. Dorsey had weakness in his legs. In the summer of 2009, while walking down steps, his legs "gave out" on him. He fell, separating his right shoulder.

On January 17, 2009, Mr. Dorsey was terminated by his employer, the City of Baltimore, because of his injuries. On January 15, 2010, Mr. Dorsey filed an Application for Line–of–Duty Disability Retirement.

On July 12, 2010, a hearing was held regarding Mr. Dorsey's claim. Counsel for ERS conceded that Mr. Dorsey was "incapacitated from the further performance of [h]is job and that the incapacity is permanent," but he challenged the "degree of impairment, degree of preexisting disability" and whether the assault was the "sole cause of [the] disability."

Mr. Dorsey had a lengthy treatment record. At the time of the hearing, he had received five MRIs, eleven steroid injections, a nerve conduction study, and decompression surgery on his back.

Several doctors noted that Mr. Dorsey had preexisting asymptomatic degenerative disc disease. On November 6, 2007, Dr. Sam Matz conducted an independent medical evaluation, noting that Mr. Dorsey had degenerative disc disease in his back that was "not work-related." He concluded that "[t]he patient's work-related diagnosis is the strain/contusion of the lumbar spine," and Mr. Dorsey's preexisting condition "may have been rendered symptomatic due to [the] work accident."

Dr. Bernhard Zünkeler conducted an independent neurosurgical evaluation. In his report, dated May 2008, he stated that, "[g]iven the appearance on MRI with disk degeneration at L5–S1, there was likely some pre-existing asymptomatic lumbar pathology, which was aggravated by the above assault, given the history."

Dr. Stanley Friedler noted preexisting degenerative disk disease at L4–L5 and L5–S1. He stated that Mr. Dorsey experienced a 35% anatomical loss to his back, 15% of which was preexisting and attributable to the degenerative disc disease and 20% due to the work incident. He found that the incapacity was "the result of an injury arising out of and in the course of the performance of his job duties." With respect to his arm/shoulder, Dr. Friedler opined that Mr. Dorsey had a 20% loss to his "right upper extremity," which converted to a 12% whole person impairment.

Dr. Jeffrey Gaber evaluated Mr. Dorsey and determined that he had a 60% disability to his back, and that this

disability was due solely to the injury that occurred on August 31, 2007. Dr. Gaber stated that testing indicated that Mr. Dorsey had a pinched nerve in the back, and the "right leg giving way is very commonly seen in patients who have a pinched nerve in the back (lumbar radiculopathy)." He concluded that Mr. Dorsey had 35% "impairment of the right shoulder as a result of the severe right shoulder AC joint separation, which is a result of the right leg giving way." (Emphasis omitted).

At the hearing, Mr. Dorsey testified that he felt "a real sharp constant pain down the back of the right leg into the foot." He described having a "weakness in the leg," causing his knee to buckle constantly. He had difficulty walking and going up and down stairs. On one occasion, he fell down some steps after his legs "gave out," causing separation of his right shoulder. His pain level in his lower back was "severe," and the pain radiated to his leg. He described the pain in his back as constant and "significantly high."

Mr. Dorsey also described the injury to his right shoulder after his fall. He experienced limitations in lifting, pushing, and pulling due to the shoulder injury, and he was in "constant discomfort."

Counsel for ERS asked Mr. Dorsey about any prior injuries or medical history regarding his neck. In December 1997, Mr. Dorsey had a fusion of C4–C5 in his neck. He stated that he had "little to no issues with [his] neck other than" the fusion.

At the end of the hearing, counsel for Mr. Dorsey asserted that Mr. Dorsey's restrictions were permanent and causally related to the work altercation. He argued that any degenerative disc disease was not relevant to the hearing examiner's determination because "Mr. Dorsey was asymptomatic with regard[ ] to his back and his right shoulder prior to" the altercation. "The bottom line," counsel stated, "is whether ... Mr. Dorsey has met the 50 percent point, which would enable [the hearing examiner] to give him the line-of-duty [pension] as opposed to non-line-of-duty pension." He argued

that the percentage of injury to the back was sufficient to qualify for benefits, and that any inclusion of an injury to the arm/shoulder would put Mr. Dorsey well above the 50% threshold for line-of-duty disability retirement.

Counsel for ERS argued that "[t]he statute says [the impairment] must be a direct result of the accident without any preexisting" condition, asserting that "preexisting is a medical question." Counsel pointed to the MRI and subsequent medical reports identifying the preexisting degenerative disc disease, asserting that any preexisting condition "under the statute rules out [Mr. Dorsey's] entitlement to a line-of-duty disability."

### The Hearing Examiner's Ruling

The hearing examiner set forth the legal requirements for a claimant to obtain disability retirement under the Baltimore City Code, art. 22, § 9(j), as follows:

- [The Claimant must] file his application no later than 1 year following his last day of employment with the City and within 5 years of the date of the accident resulting in his impairment;

- [The Claimant must] be permanently incapacitated from the further performance of the duties of his job classification with the City of Baltimore;

- [T]he incapacity must be due to one or more of the impairments listed in the schedule set forth in Section 9(j)(5) which requires the impairment to be, "a 50% anatomical loss of the use of any 1, or a 25% or more anatomical loss of each of 2 or more," of the body parts listed.

- The body parts specified in the statute are speech, sight, neck, back, vital bodily organ, a part of the central nervous system, arm, leg, shoulder, hearing, or a mental incapacity whereby a member applies for and is granted a disability benefit under the Federal Old–Age Survivor's and Disability Insurance Act.

- The Claimant must have sustained the scheduled impairment as the direct result of a bodily injury through an accident occurring while in the actual performance of duty with the city at a definite time and place; and

- [T]he impairment must be independent of all other causes and independent of any preexisting physical or medical conditions, job-related or otherwise.

The hearing examiner found that Mr. Dorsey satisfied all but the last condition, that the impairment "be independent of ... any preexisting physical or medical conditions." With respect to that condition, the hearing examiner found that Mr. Dorsey's "pre-existing lumbar degeneration [did] contribute to the current impairment," noting that a "hit in the back with a chair did not create" the degenerative disc disease found on the MRI. She noted Dr. Matz's opinion that Mr. Dorsey's degenerative disc disease was not work-related, and Dr. Zünkeler's opinion that Mr. Dorsey suffered from a "pre-existing asymptomatic lumbar pathology, which was aggravated by the assault." She also cited Dr. Friedler's apportionment of part of Mr. Dorsey's impairment to his "pre-existing lumbar disease."

The hearing examiner found that Mr. Dorsey sustained a "40% disability to the back, with 15% of the impairment caused by the pre-existing condition and 25% due to the assault of 8/31/07." She concluded that Mr. Dorsey suffered a "25% impairment to his back and 25% impairment to his right arm due to the assault which occurred in the line of duty on 8/31/07." She denied Mr. Dorsey's application, however, stating:

[T]he impairment to Mr. Dorsey's back is not independent of all other causes. The evidence is clear that the pre-existing degenerative disc disease in his back contributes to Mr. Dorsey's disability and without it Mr. Dorsey would not be as disabled as he currently is. Therefore Mr. Dorsey does not meet the statutory requirements set forth in the

City Code and his application for [line-of-duty] disability benefits is DENIED.

## Proceedings in the Circuit Court

Mr. Dorsey filed a Petition for Judicial Review of the hearing examiner's ruling in the Circuit Court for Baltimore City. The court held a hearing on January 4, 2011. Counsel for Mr. Dorsey advised that there was no dispute regarding the facts found by the hearing examiner, but rather, the challenge was to the "conclusion based upon the facts." Counsel argued that the City Code provision "doesn't say [the claimant] can't have any pre-existing, it says . . . [the claimant's] impairment has to be independent of any pre-existing" condition, and the hearing examiner's finding that, in total, 50% of Mr. Dorsey's impairment was due to the accident "makes that . . . independent of any pre-existing [condition] he may have had." Counsel for ERS responded that the evidence in the record supported the hearing examiner's finding, which he characterized as "if [Mr. Dorsey] didn't have that pre-existing [condition] he wouldn't be disabled."

The circuit court ruled from the bench, stating that "[t]he sole question before the Court is whether the hearing examiner made an error [of] law in stating that [Mr. Dorsey] does not meet the statutory requirements for line of duty retirement benefits." The court ruled that the hearing examiner's findings of "25 percent impairment to his back and 25 percent impairment to his shoulder complies with the [City Code's] requirements." [1] It ruled that the "case should be remanded for the hearing examiner to make that conclusion." The court's written order, issued the same day, provided that the hearing examiner's decision "is hereby reversed and appel-

---

1. The court quoted the following from *Baltimore City Passenger Railway Co. v. Kemp*, 61 Md. 74, 81 (1883):

> It is the common observation of all, that the effects of personal physical injuries depend much upon the peculiar conditions and tendencies of the persons injured; and what may produce but slight and comparatively uninjurious consequences in one case, may produce consequences of the most serious and distressing character in another.

lant's application for line of duty disability retirement benefits is granted."

ERS filed a timely notice of appeal.

## STANDARD OF REVIEW

The Baltimore City Code provides that "[t]he determination of the hearing examiner is presumptively correct and may not be disturbed on review unless it is arbitrary, illegal, capricious, or discriminatory." Baltimore City Code, art. 22, § 9(p)(12)(iii). This Court has explained that, although this provision "limits 'a reviewing court's power to reverse administrative actions and follows the general policy regarding review of administrative agency decisions,'" the court does have "'the power to reverse an administrative decision that is arbitrary, capricious, illegal or discriminatory.'" *Crowder v. Mayor and City Council of Baltimore,* 79 Md.App. 291, 299, 556 A.2d 726 (quoting *Fire and Police Employees Ret. Sys. of the City of Baltimore v. Powell,* 78 Md.App. 563, 566, 554 A.2d 440 (1989)), *cert. denied,* 317 Md. 356, 563 A.2d 784 (1989).

In *Board of Trustees for the Fire & Police Employees' Retirement System of the City of Baltimore v. Mitchell,* 145 Md.App. 1, 8–9, 800 A.2d 803 (2002), this Court, interpreting another provision of the Baltimore City Code, set forth the applicable standard of review as follows:

> In reviewing an administrative decision, such as the one before us, our role "is precisely the same as that of the circuit court." *Dep't of Health & Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–04, 641 A.2d 899 (1994). We review the decision of the administrative agency itself, *Ahalt v. Montgomery County,* 113 Md.App. 14, 20, 686 A.2d 683 (1996), and not the findings of fact and conclusions of law made by the circuit court. *Consumer Protection Division v. Luskin's, Inc.,* 120 Md.App. 1, 22, 706 A.2d 102 (1998), *rev'd in part on other grounds,* 353 Md. 335, 726 A.2d 702 (1999). We further note that under § 34(1) of the Retirement Act, a "final determination of the hearing examiner" is "presumptively correct" and it may not be disturbed

on appeal unless it is "arbitrary, illegal, capricious or discriminatory." In other words, our role "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel Serv., Inc. v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226 (1994). "In applying the substantial evidence test, a reviewing court decides 'whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.'" *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 68, 729 A.2d 376 (1999).

Unlike a factual conclusion, however, a legal conclusion is not entitled to deference. *Bozeman v. Disability Review Board of the Prince George's County Police Pension Plan,* 126 Md.App. 1, 5, 727 A.2d 384 (1999). "When the question before the agency involves interpretation of an ordinance or statute, our review is more expansive. We are not bound by the agency's interpretation." *Id.*

## DISCUSSION

### I.

■ ERS contends that the circuit court erred in reversing the administrative decision because "the decision of the hearing examiner was supported by substantial evidence and was not based on prejudicial legal error." Specifically, it asserts that, "[g]iven the evidence of other causes contributing to the disability, it was permissible for the [hearing examiner] to conclude that the element of causation had not been satisfied." ERS argues that Mr. Dorsey's impairment was, "as a matter of fact," not independent of any preexisting physical condition, as required by the Baltimore City Code.

Mr. Dorsey responds that the circuit court "correctly reversed the hearing examiner [because] the hearing examiner made an erroneous conclusion of law." He asserts:

The fifty percent anatomical loss from one body part or twenty five percent loss from two body parts is the thresh-

old for being awarded a line-of-duty disability retirement. It is the percentages contained in those thresholds that must be independent of other causes. The statute does not say that you are unable to have pre-existing conditions. The statute states that your impairment has to be independent of those pre-existing conditions. [Mr. Dorsey], per the decision of the Hearing Examiner, has met those thresholds.

The Baltimore City Code contains specific requirements that must be satisfied for a claimant to be eligible for line-of-duty disability retirement benefits. Baltimore City Code, art. 22, § 9(j)(1) provides as follows:

A Class C member [2] shall be retired on a line-of-duty disability retirement if a hearing examiner determines that:

(i) the member is permanently incapacitated for the further performance of the duties of his or her job classification in the employ of the City due to one or more of the impairments listed in the schedule provided in this subsection; and

(ii) the member sustained the scheduled impairment as the direct result of bodily injury through an accident **independent of all other causes and independent of any preexisting physical or medical conditions,** job-related or otherwise, occurring while in the actual performance of duty with the City at a definite time and place, without willful negligence on the part of the member.

(Emphasis added).

To qualify for line-of-duty disability retirement, a claimant must meet certain disability loss requirements. *Id.* § 9(j)(5). Specifically, "[f]or line-of-duty disability retirement benefits awarded on or after April 1, 2001, a 50% anatomical loss of the use of any 1 or a 25% or more anatomical loss of each of 2 or more of the impairments listed in subparagraph (iii)" is re-

---

**2.** A Class C member is defined, with certain exceptions, as a person who becomes an employee on or after July 1, 1979, and completes 12 consecutive months of employment. Baltimore City Code, art. 22, § 9(a)(1).

quired. *Id.* § 9(j)(5). The schedule of impairments includes the neck, back, leg, and shoulder.[3] *Id.* § 9(j)(5)(iii). The claimant has the burden of proving, by a preponderance of the evidence, that he "meets all of the eligibility requirements set by law for the applicable benefit." *Id.* § 9(p)(10)(i).[4]

A hearing examiner conducts the hearing "on all matters involving . . . line-of-duty disability claims . . . and any related matters arising out of these claims." *Id.* § 9(p)(7). The hearing examiner is tasked with determining the following:

(A) generally, whether the member's disability qualifies under § 9(j) of this article, and

(B) specifically, **whether the member's disability is, independent of any preexisting physical or medical condition,** whether job-related or otherwise, the direct result of a bodily injury arising through an accident that occurred:

1. within 5 years of the date of the member's application;

2. while in the actual performance of duty at some definite time and place; and

3. without willful negligence on the member's part.

*Id.* § 9(p)(11)(iv) (emphasis added).

As indicated, the issue here is whether the hearing examiner erred in finding that, because Mr. Dorsey had asymptomatic degenerative disc disease, he did not qualify for benefits because his disability was not "independent of any preexisting physical or medical condition." As explained below, we hold that the hearing examiner's decision was premised on an erroneous conclusion of law, and the circuit court properly reversed the finding of the hearing examiner.

---

**3.** ERS does not dispute that Mr. Dorsey's impairments are included in the schedule.

**4.** There is another class of disability benefits available to some employees. Non-line-of-duty disability benefits are available if a claimant is permanently incapacitated to perform the duties of his or her job, and the claimant has five years of service. Baltimore City Code, art. 22, § 9(i)(1). The hearing examiner determined that Mr. Dorsey did not have five years of membership service.

The hearing examiner found that Mr. Dorsey sustained a "40% disability to the back, with 15% of the impairment caused by the pre-existing condition and 25% due to the assault of 8/31/07." She concluded that Mr. Dorsey suffered a "25% impairment to his back and 25% impairment to his right arm due to the assault which occurred in the line of duty on 8/31/07." As the trial court found, the 25% impairment to the back and the 25% impairment to the right arm, which was the result of the injury incurred in the line of duty, satisfied the requirements of the statute.

The hearing examiner misconstrued the provision of the law that requires that an impairment must be "independent of any preexisting ... condition." *Id.* § 9(p)(11)(iv). Pursuant to this provision, and as found by the hearing examiner, the 15% of the impairment to the back that was caused by the preexisting condition did not qualify under the statute. The hearing examiner went further, however, and found that the mere presence of preexisting degenerative disc disease disqualified Mr. Dorsey for line-of-duty disability, even though he otherwise met the disability loss requirements due to an injury while working in the line of duty. We hold that this was error.

Although we have not previously addressed the precise issue presented in this case, we have held that a prior injury does not, per se, preclude a line-of-duty ("LOD") disability. *Hersl v. Fire & Police Employees' Retirement System,* 188 Md.App. 249, 267, 981 A.2d 747 (2009). In that case, we reversed a finding that the claimant was not entitled to a LOD disability retirement, rejecting the argument that "the proximate cause of LOD permanent disability must be an exclusive cause" of the disability to qualify for disability retirement. *Id.* at 267, 269, 981 A.2d 747.

In *Hersl,* the Retirement System argued that a LOD disability could not be based on a finding of permanent disability to claimant's knee because there had been two prior injuries to the knee, and therefore, the disability could not be attributed

solely to the injury at work. *Id.* at 267, 981 A.2d 747. We rejected that argument, stating:

> Although there is evidence of *injuries* to Hersl's left knee prior to February 5, 2006, there is no evidence that he suffered from *any occupational disability* of the knee on the day of the LOD accident. He was on active duty and performing the duties of a firefighter when he was injured, including injuries to the shoulders and knees. The Retirement System has not referred us to any court decision holding that the ordinary principles of proximate causation in compensation cases do not apply to [line-of-duty] disability retirements.

*Id.* at 268, 981 A.2d 747. We found nothing in the Baltimore City Code "indicating a legislative intent that, in order to be eligible for a LOD disability pension, a claimant, who is injured while fully performing the duties of his job classification, must never have suffered a prior, non-LOD injury to the body part involved in the claim." *Id. See also Fire & Police Employees' Retirement System of the City of Baltimore v. Middleton,* 192 Md.App. 354, 362, 994 A.2d 514 (2010) (A claimant "is not required to show that the line-of-duty injury is hermetically sealed from any pre-existing condition or prior injury.").

The hearing examiner in this case erred in finding that a claimant with a preexisting condition that contributes to an impairment in any way may not recover line-of-duty disability retirement benefits. Although the percentage of the impairment that is due to the preexisting condition does not count in calculating the percentage threshold required to qualify for disability, a preexisting condition does not completely disqualify a claimant from LOD disability if he or she otherwise meets the statutory requirements.

Indeed, as appellee notes in his brief:

> Under Appellant's theory, if a police officer, who is over the age of fifty, has small degenerative changes in his back, but was otherwise fine, gets shot in the line-of-duty and is now walking with a cane and has a fifty-one percent impair-

ment to his back with fifty percent being as a result of the shooting and one percent from living life and getting older, then he is not permitted to collect a line-of-duty disability retirement. That is neither what the statute says nor what the statute means.

In determining how to factor in a preexisting condition in determining LOD disability, we find instructive how this issue is resolved in the workers' compensation context. *See Hersl,* 188 Md.App. at 268, 981 A.2d 747 ("[I]n resolving causation questions under this Baltimore City pension plan, the Court of Appeals has found analogies to workers' compensation cases frequently to be helpful."). In workers' compensation cases, if an accident occurs within the scope of employment, and the accident aggravates an employee's preexisting condition, the determination of permanent partial disability is made by apportioning the resulting disability. As explained by a leading treatise on the subject:

> Consider Claimant A, who is diagnosed as having nascent diabetes myelitis. While performing an employment activity, A sustains a laceration to his left foot. Circulatory problems attributable to his diabetic condition complicate and prolong his recovery from the accident.... When it is time for a determination of A's permanent partial disability, however, **the Commission may apportion between the disability attributable to the injury and the disability attributable to the diabetes.**

RICHARD GILBERT & ROBERT HUMPHREY, MARYLAND WORKERS' COMPENSATION HANDBOOK § 6.14, 31–32 (3d ed.2007) (emphasis added).

Here, the hearing examiner similarly apportioned the amount of the disability that was the "direct result" of the work accident. It found that Mr. Dorsey suffered a 40% disability to the back, 15% caused by the preexisting condition and 25% due to the work injury.

The hearing examiner went on to find that Mr. Dorsey suffered a "25% impairment to the back and 25% impairment to his arm due to the assault which occurred in the line of duty

on 8/31/07." This portion of Mr. Dorsey's disability, which met the statutory requirements, was independent of his preexisting condition and satisfied the requirements of the statute. That there was some additional disability due to a preexisting condition did not preclude Mr. Dorsey from receiving LOD disability benefits. The circuit court properly reversed the ruling of the administrative agency denying benefits.

## II.

Although the circuit court initially ruled that it was going to remand the case for the hearing examiner to grant Mr. Dorsey line-of-duty disability retirement benefits, the order the court ultimately signed *granted* Mr. Dorsey's application for disability retirement benefits. ERS contends that the circuit court's "order granting line-of-duty disability retirement benefits was not a proper dispositive order because it usurped the authority of the administrative agency." Specifically, ERS asserts that the Baltimore City Council vested the ERS and the hearing examiner with the exclusive authority "to decide the eligibility of members of the system to receive line-of-duty disability retirement benefits," and therefore, the circuit court's decision to reverse the hearing examiner's decision and grant benefits, rather than remand the case with directions for the entry of a new award, usurped the agency's authority.

Mr. Dorsey responds that, pursuant to Md.Code (2009 Repl.Vol.) § 10–222(h)(3) of the State Government Article, the circuit court is authorized to reverse the decision of the hearing examiner.[5] He does not specifically address the argu-

---

**5.** Maryland Code (2009 Repl.Vol.) § 10–222(h) of the State Government Article, provides that:

In a proceeding under this section, the court may:
(1) remand the case for further proceedings;
(2) affirm the final decision; or
(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:
(i) is unconstitutional;

ment that the circuit court erred in granting benefits rather than remanding the case, but he states that, in the event that this Court agrees that the circuit court's order was improper, we should affirm the circuit court's order and remand the case to the circuit court, with instructions to remand to the hearing examiner with further instructions to grant him line-of-duty disability retirement.

In *O'Donnell v. Bassler*, 289 Md. 501, 509–11, 425 A.2d 1003 (1981), the Court of Appeals explained the authority of a circuit court reviewing a ruling by an administrative agency:

It is a fundamental principle of administrative law that a reviewing court should not substitute its judgment for the expertise of the administrative agency from which the appeal is taken. This principle underlies the rule that if an administrative function remains to be performed after a reviewing court has determined that an administrative agency has made an error of law, the court ordinarily may not modify the agency order. Under such circumstances, the court should remand the matter to the administrative agency without modification. Of course, the court need not remand if the modification is so minor as to make remand inappropriate, or if remand is otherwise futile. Finally, if an administrative function remains to be performed, a reviewing court may not modify the administrative agency's action even when a statute provides that the court may "affirm, modify or set aside" because a court may not usurp administrative functions.

(Citations omitted). *Accord Consumer Protection Div. Office of Attorney Gen. v. Consumer Publ'g Co.*, 304 Md. 731, 747–50, 501 A.2d 48 (1985); *Belvoir Farms Homeowners Ass'n v. North*, 355 Md. 259, 267–69, 734 A.2d 227 (1999).

---

(ii) exceeds the statutory authority or jurisdiction of the final decision maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious.

Here, the circuit court properly determined that the hearing examiner had made an error of law, but it exceeded its authority when it granted Mr. Dorsey's "application for line of duty disability retirement benefits." [6]  Accordingly, although we affirm the circuit court's order reversing the hearing examiner's decision, we vacate the portion of the circuit court's order granting benefits to Mr. Dorsey.  We remand the case to the circuit court, to remand the case to the administrative agency to order, consistent with its factual findings, that Mr. Dorsey is entitled to line-of-duty disability retirement benefits.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED, IN PART, AND VACATED, IN PART. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  APPELLANT TO PAY 50% OF THE COSTS; APPELLEE TO PAY 50% OF THE COSTS.**

---

**6.**  The circuit court subsequently acknowledged, in a hearing held after the notice of appeal was filed, that it did not have the authority to grant benefits, and, instead, it should have remanded to the administrative agency to grant benefits.